[No. D058547. Fourth Dist., Div. One. Mar. 20, 2012.]

Estate of ROBERT CLINTON MOSS, SR., Deceased.
BARRY D. MOSS, Contestant and Appellant, v.
LORRAINE BERGERON MOSS, as Executor, etc., Claimant and
Respondent.

**COUNSEL**

Barry D. Moss, in pro. per., for Contestant and Appellant.

Herring & Herring and Margaret Kay Herring for Claimant and Respondent.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Any interested person who wishes to contest a will may bring a contest before the will is admitted to probate (i.e., a preprobate contest) (Prob. Code, § 8250).[1] In addition, "any interested person, *other than a party to a will contest and other than a person who had actual notice of a will contest in time to have joined in the contest*," may bring a contest *after* the will is admitted to probate (i.e., a postprobate contest) (§ 8270, subd. (a), italics added). Upon filing either a preprobate or postprobate contest, the contestant must serve a summons on certain statutorily specified persons. (§§ 8250,

---

[1] Unless otherwise specified, all subsequent statutory references are to the Probate Code.

8271.) A person who receives such a summons may file a demurrer to the contest within 30 days of service of the summons. (§§ 8251, 8271, subd. (b).)

In this case, Lorraine Bergeron Moss (Lorraine) filed a petition to probate a will of Robert Clinton Moss, Sr. (the decedent). In her petition, Lorraine alleged that she was the decedent's spouse and executor of the will. The decedent's son, Oliver L. Moss (Oliver), and grandson, Barry D. Moss (Barry), filed preprobate contests. The trial court admitted the will to probate without adjudicating, on the merits or otherwise, the preprobate contests.

Barry filed a postprobate contest to the will. Barry effectuated personal service of his postprobate contest on Lorraine's attorney of record in the action, Margaret K. Herring. Attorney Herring subsequently filed a declaration in which she asserted that the time for filing a demurrer had not yet expired because Herring was not authorized to accept service of process on Lorraine's behalf and Barry had failed to serve Lorraine personally with a copy of the postprobate contest. Lorraine subsequently filed a demurrer to Barry's postprobate contest, claiming that Barry was precluded from bringing a postprobate contest because he had already brought a preprobate contest and because he had actual notice of Oliver's preprobate contest, among other contentions. Without expressly ruling on the timeliness of the demurrer, the trial court sustained Lorraine's demurrer without leave to amend, ruling that the bar against successive probate contests contained in section 8270 precluded Barry's postprobate contest.

On appeal, Barry contends that the trial court erred in implicitly concluding that Lorraine's demurrer was timely. Barry contends that service of process on a party's attorney of record in a case is sufficient service of process under Code of Civil Procedure section 416.90. Courts have interpreted that statute to permit service of process to be made on a person who has " 'ostensible authority to accept service' " on behalf of a party. (*Warner Bros. Records, Inc. v. Golden West Music Sales* (1974) 36 Cal.App.3d 1012, 1018 [12 Cal.Rptr. 71] (*Warner Bros.*).) We conclude that Barry's service of his postprobate contest on Lorraine's attorney of record in the action constituted proper service of process on Lorraine, and that Lorraine's demurrer was therefore untimely under the applicable statutes.

In the alternative, Barry contends that the trial court erred in concluding that section 8270 barred his postprobate contest. We conclude that the trial court erred in sustaining Lorraine's demurrer on the ground that the bar against

successive probate contests contained in section 8270 barred Barry's postprobate contest, because the trial court never adjudicated Barry's preprobate contest. Accordingly, we reverse the court's order sustaining the demurrer.[2]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Oliver's petition to probate the decedent's 1996 will*

In July 2009, Oliver filed a petition to probate the decedent's will. Oliver's petition stated that the will was dated "1993." In an addendum to the petition, Oliver stated that he "requested a copy of the last known Last Will & Testament of [the decedent] and was denied access by [Lorraine]."[3] Oliver subsequently filed a supplemental brief in which he stated that he had recently obtained access to a will dated August 30, 1996 (1996 Will), which he claimed should be admitted to probate as the decedent's will. Oliver attached a copy of the 1996 Will to his brief.

### B. *Lorraine's petition to probate the decedent's 2006 will*

In September 2009, Lorraine filed an objection to Oliver's petition, and also filed her own petition to probate a will dated September 13, 2006 (2006 Will), in the decedent's estate. Attorney Herring appeared in the action and filed the petition and the objection on behalf of Lorraine.

Lorraine later filed declarations from the two attesting witnesses to the 2006 Will in which the witnesses stated that they had observed the decedent sign the 2006 Will, and that the decedent appeared to be of sound mind at the time he executed the will.

### C. *The preprobate contests to the 2006 Will*

In October 2009, Oliver, Barry, and the decedent's granddaughter, Jill Blackwell, each filed separate objections (preprobate contests) to Lorraine's petition to probate the 2006 Will. Blackwell's objection stated that the decedent's purported handwriting on the 2006 Will did not match known handwriting samples of the decedent.[4] In the alternative, Blackwell claimed

---

[2] In light of our reversal, we need not consider any of the other contentions that Barry raises in his brief. In particular, although Barry raises a number of arguments pertaining to the merits of his postprobate contest, we express no opinion concerning these arguments.

[3] Oliver's petition was apparently the first document filed in this action.

[4] Blackwell attached copies of samples of the decedent's handwriting to her petition.

that at the time the 2006 Will was purportedly executed, the decedent lacked sufficient mental capacity to effectuate a will. Blackwell supported this claim with a declaration concerning her knowledge of the decedent's mental capacity in 2006.[5]

Barry raised several claims in his objection, including that the handwriting on the 2006 Will did not appear to be the decedent's. Barry also questioned the authenticity of the 2006 Will and whether Lorraine and the decedent had in fact ever been married.[6] Oliver's objection stated grounds nearly identical to the grounds stated in Barry's objection. As discussed above, Oliver also filed a supplemental brief in which he requested that the court admit the 1996 Will to probate. In this brief, Oliver raised additional objections to Lorraine's petition and requested that the attesting witnesses to the 2006 Will be "subject[ed] to cross-examination" with respect to their declarations.

D. *The trial court's order admitting the 2006 Will to probate*

As discussed in greater detail in part III.B.2., *post*, on November 19, 2009, the trial court held a hearing on Lorraine's petition. At the conclusion of the hearing, the court admitted the will to probate.

E. *Barry's postprobate contest of the 2006 Will and petition to admit the 1996 Will to probate*

In January 2010, Barry filed a petition to revoke the 2006 Will (postprobate contest). Barry's postprobate contest raised several of the same contentions that he had raised in his preprobate contest, as well as several additional contentions. Barry listed numerous grounds for contesting the will, including fraud, forgery, misrepresentation, undue influence, and lack of due execution. Barry also stated that he believed "[Lorraine] conspired with others to manufacture documents designed to defraud the Moss family of their rightful legacy and inheritance."

In May 2010, Barry filed his own petition to probate the 1996 Will.

F. *Lorraine's demurrer*

In May 2010, Lorraine filed a demurrer to Barry's postprobate contest on several grounds, including that section 8270, subdivision (a) precluded Barry's attempt to bring a postprobate contest, since he had brought a preprobate contest pertaining to the same will. In June 2010, Barry filed a

---

[5] Blackwell also claimed that the proof of service on the 2006 Will was defective.

[6] Barry's objection stated in part, "The family demands proof indicating that [Lorraine] was actually married to the [d]ecedent . . . ."

document entitled "Declaration of Barry D. Moss in Objection to the Probate of the Purported Last Will & Testament of Robert C. Moss, Sr. Dated September 13, 2006." In his declaration, Barry raised several arguments pertaining to the merits of his petition and urged the trial court to "set a trial date to hear the case and review the evidence." He also contended, "[Barry] is not barred from bringing a contest because [Barry] has always maintained his intention to bring a contest as is evidenced by [Barry's] first objection to [Lorraine's] application for probate, which is contained in the court file."

The trial court sustained the demurrer without leave to amend, reasoning in part as follows: "A review of the court file shows that Mr. Barry Moss filed several objections to the petition to probate filed by [Lorraine], which was granted by the court. [Citations] A review of these filings show[s] that Mr. Barry Moss filed objections to . . . the will, alleging that the will was a forgery based on the decedent's purported handwriting and signature. [Citation.] [¶] A review of the court file further shows that Mr. B. Moss had actual notice of the contest filed by his father, Oliver L. Moss, in light of the proof of service of the petition filed by . . . Oliver. [Citation.] Hence pursuant to Probate Code [section] 8270 [, subdivision] (a), the Court sustains the instant demurrer without leave to amend."

The court stated that in light of its ruling sustaining Lorraine's demurrer, it would dismiss Barry's petition to probate the 1996 Will.

G. *Barry's appeal*

Barry filed a notice of appeal from the August 26, 2010 order sustaining Lorraine's demurrer and dismissing his petition to probate the 1996 Will.

III.

DISCUSSION

A. *The trial court erred in implicitly[7] ruling that Lorraine's demurrer was timely*

Barry contends that the trial court "erred in . . . allowing [Lorraine's] demurrer because it was clearly submitted late."[8]

---

[7] The trial court did not expressly address the timeliness of Lorraine's demurrer in its order sustaining the demurrer. However, by sustaining the demurrer, the court implicitly ruled that the demurrer was timely.

[8] Lorraine fails to address this contention in her brief.

### 1. *Factual and procedural background*

On January 26, 2010, Barry filed a petition to revoke probate of the 2006 Will (postprobate contest). Barry filed a proof of service indicating that on March 5, 2010, copies of Barry's postprobate contest were mailed to Attorney Herring, together with two copies of a notice and acknowledgement of receipt. Barry also filed a proof of service indicating that on March 10, 2010, a person named Daniel Dolezal personally served Attorney Herring with a summons and a copy of Barry's postprobate contest. The proof of service states in relevant part, "Party served: Margaret Herring, Esq., on behalf of Lorraine Bergeron Moss."

On May 4, 2010, Attorney Herring filed a declaration in opposition to Barry's postprobate contest. In her declaration, Attorney Herring contended that Barry had not properly served his postprobate contest on Lorraine. Attorney Herring further stated: "Previously, Barry attempted to serve my client, Lorraine, by having a process server personally serve me with the summons and petition [(i.e., the postprobate contest)]. I specifically informed the process server that I was *not authorized* to accept service of the summons and petition on behalf of Lorraine . . . . [¶] I have now been authorized to accept service of the summons and petition and am now returning to Barry a complete Notice and Acknowledgement of Receipt. The time by which my client has to file a formal response to the summons and petition will be 30 days from today's date, which is the date I have signed the Notice and Acknowledgement of Receipt."

Barry filed an objection to Attorney Herring's declaration in which he stated that he had effectuated personal service of the postprobate contest on Attorney Herring on March 10. Barry cited Code of Civil Procedure section 416.90,[9] and argued, "[A]n attorney has an implied authority to represent their client including service of process." Barry also contended that the time for filing a demurrer to his postprobate contest had expired 30 days after March 10.

Attorney Herring filed a supplemental declaration in which she stated in relevant part, "Contrary to the assertions in Barry's declaration[10] the person to be served was the personal representative, not the attorney for the personal

---

[9] As discussed in greater detail below, Code of Civil Procedure section 416.90 provides that service of process on a person may be accomplished by delivering a copy of the summons and complaint to such person "or to a person authorized by him to receive service of process."

[10] Although not material to our decision, for purposes of clarity we note that the record indicates that Barry's objections were set forth in a brief rather than in a declaration.

representative." In response, Barry filed an objection to Herring's supplemental declaration in which he reiterated his argument that service of the summons and petition on Lorraine through service on her attorney of record was proper pursuant to Code of Civil Procedure section 416.90. Barry also argued that in light of his proper service of the postprobate contest on March 10, 2010, the May 28, 2010 demurrer was not timely.[11]

The trial court did not address the timeliness of the demurrer in its order sustaining Lorraine's demurrer without leave to amend.

### 2. *Governing law*

#### a. *Probate Code provisions*

■ The Probate Code provides generally that a party may file a demurrer to a postprobate contest within 30 days of the service of the summons pertaining to the petition to revoke. (§§ 8250, 8251, 8271.) Section 8271 provides:

"(a) On the filing of the petition [to revoke the probate of a will], a summons shall be directed to the personal representative and to the heirs and devisees of the decedent, so far as known to the petitioner. The summons shall contain a direction that the persons summoned file with the court a written pleading in response to the petition within 30 days after service of the summons. Failure of a person timely to respond to the summons precludes the person from further participation in the revocation proceeding, but does not otherwise affect the person's interest in the estate.

"(b) *The summons shall be issued and served with a copy of the petition and proceedings had as in the case of a contest of the will.*

"(c) If a person fails timely to respond to the summons:

"(1) The case is at issue notwithstanding the failure and the case may proceed on the petition and other documents filed by the time of the hearing, and no further pleadings by other persons are necessary.

"(2) The person may not participate further in the contest, but the person's interest in the estate is not otherwise affected.

---

[11] Barry also repeated his contention that he had properly served the summons and postprobate contest on Lorraine via her attorney in the declaration discussed in part II.F., *ante.*

"(3) The person is bound by the decision in the proceeding." (Italics added.)

 Section 8250 provides in turn that the summons shall be served pursuant to the rules governing issuance and service of a summons contained in the Code of Civil Procedure:

"(a) When a will is contested under Section 8004,[12] the contestant shall file with the court an objection to probate of the will. Thereafter, a summons shall be issued and served, with a copy of the objection, on the persons required by Section 8110 to be served with notice of hearing of a petition for administration of the decedent's estate. *The summons shall be issued and served as provided in Chapter 3 (commencing with Section 412.10) and Chapter 4 (commencing with Section 413.10) of Title 5 of Part 2 of the Code of Civil Procedure.* The summons shall contain a direction that the persons summoned file with the court a written pleading in response to the contest within 30 days after service of the summons.

"(b) A person named as executor in the will is under no duty to defend a contest until the person is appointed personal representative." (Italics added.)

Section 8251 outlines the timeframe within which an interested party may file a demurrer to a will contest (i.e., a preprobate contest or a postprobate contest)[13] and provides in relevant part: "(a) The petitioner and any other interested person may jointly or separately answer the objection or demur to the objection within the time prescribed in the summons."

 b. *Service of a summons pursuant to Code of Civil Procedure section 416.90*

The Code of Civil Procedure provides that a party may serve process upon a person "by delivering a copy of the summons and of the complaint to such person or to a person *authorized by him to receive service of process*." (Code Civ. Proc., § 416.90, italics added.)[14] In *Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 407–408 [4 Cal.Rptr.3d 338] (*Summers*) the Court of Appeal reviewed the legislative history of section 416.90 and stated: "In 1969 the California Legislature enacted a comprehensive revision of the laws

---

[12] Section 8004 provides in relevant part: "(b) If a will is contested, the applicable procedure is that provided in Article 3 (commencing with Section 8250) of Chapter 3."

[13] Sections 8250 and 8251 apply to both preprobate contests and postprobate contests. (See § 8270, subd. (b) [providing procedures are to be the same for preprobate contests and postprobate contests].)

[14] Code of Civil Procedure section 416.90 is contained in "Chapter 4 . . . of Title 5 of Part 2 of the Code of Civil Procedure." (§ 8250.)

governing service of process. The Legislature based this revision on recommendations contained in a report by a joint committee representing the Judicial Council and the State Bar and these recommendations were adopted as the legislative history of the statutes." (Fns. omitted.)

The *Summers* court noted that the Judicial Council comment to Code of Civil Procedure section 416.90 provides: " 'If the process is delivered to an agent of defendant, *such agent must be one who is authorized by law* or by appointment to receive service of process, and the agent of an individual for other purposes is not necessarily authorized to receive such process.' " (*Summers, supra,* 140 Cal.App.4th at pp. 411–412, quoting Judicial Council of Cal., Ann. Rep. (1969) p. 55.)

In *Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778 [108 Cal.Rptr. 828, 511 P.2d 1180] (*Pasadena*), the Supreme Court concluded that service of process on a person erroneously identified by a corporation in official documents as its secretary and treasurer constituted service on the corporation under Code of Civil Procedure section 416.10, subdivision (b), which authorizes service by delivering a copy of the summons and complaint to the corporation's secretary or treasurer. The *Pasadena* court held that by serving "a corporate agent with *ostensible* authority to receive process," the plaintiff "effected valid service upon the defendants." (*Pasadena, supra,* at p. 783, italics added.)

The court in *Warner Bros., supra,* 36 Cal.App.3d 1012 applied *Pasadena* in holding that service pursuant to Code of Civil Procedure section 416.90 may be effectuated where a person has " 'ostensible authority to accept service' " on behalf of the party. (*Warner Bros., supra,* at p. 1018.) The plaintiffs in *Warner Bros.* sued an attorney (Leeds) and several of Leeds's clients. (*Id.* at pp. 1014–1015.) In their complaint, the plaintiffs alleged that Attorney Leeds had assisted the defendants in "pirating" recorded performances that the plaintiffs owned. (*Id.* at p. 1014.) The plaintiffs purported to serve the defendants by personally serving the summons and complaint on Attorney Leeds. (*Id.* at p. 1015.) Several of the defendants moved to quash service of the summons, on the ground that Attorney Leeds was not authorized to receive service on their behalf.[15] (36 Cal.App.3d at p. 1015.) The trial court granted the motions to quash, stating that " '[i]n order for [Attorney Leeds] to be such an agent [(i.e., an agent authorized to accept service)], his authorization must be real and actual and cannot be inferred or implied.' " (*Id.* at p. 1016.)

---

[15] The *Warner Bros.* court noted that the defendants supported their motions by filing declarations stating that Attorney Leeds was not authorized to accept service of process on their behalf. (*Warner Bros., supra,* 36 Cal.App.3d at p. 1015.)

■ On appeal, the *Warner Bros.* court held that the trial court's require-ment of an actual appointment was an "incorrect principle," in light of *Pasadena.* (*Warner Bros., supra*, 36 Cal.App.3d at p. 1018.) The *Warner Bros.* court further concluded that an attorney may have a relationship with a party such that service of a summons on the attorney constitutes sufficient service of the party under Code of Civil Procedure section 416.90. (*Warner Bros.*, at pp. 1017–1018; accord, *Summers, supra*, 140 Cal.App.4th at p. 414 ["The question remains whether service can be upheld on the theory [that] a close connection between [the agent] and [the party] made it ' "highly probable" ' [the party] would receive actual notice of the service of process on [the agent] on her behalf."].) In reaching this conclusion, the *Warner Bros.* court discussed the relationship between the attorney and the parties to be served in that case, as follows:

"As an attorney retained by defendants, Leeds was their agent. [Citations.] The nature of the services performed by Leeds for defendants and the necessity for his repeated communication with them in performing those services, made it 'highly probable' that defendants would receive actual notice of the service of process on Leeds upon their behalf. This conclusion is strengthened by the fact that the instant action was based, in part, upon the services which Leeds rendered for defendants as their agent. Therefore, considering the situation from a practical standpoint, service of the summons and complaint on Leeds could be valid as to defendants . . . .

"Defendants point to the rule that an attorney has no power to receive, on behalf of his client, service of the original process by which jurisdiction is acquired, unless the attorney has been specifically authorized by the client to receive service. (7 C.J.S. 905, Attorney and Client, § 83.) That rule has no application in view of [Code of Civil Procedure] section 416.90, which does not distinguish between an attorney and other persons who may be, actually or ostensibly, authorized to receive service of process on behalf of the principal.

"Defendants contend [Code of Civil Procedure] section 416.90 does not apply because Leeds is an independent contractor, not an employee or an agent. [Citation.] Such labels are not determinative in ascertaining the validity of substituted service under [Code of Civil Procedure] section 416.90. [Citations.] The essential factor here is that Leeds' relationship with the individual defendants may have been sufficiently close and enduring to make it reasonably certain that they would be apprised of the service on Leeds upon their behalf." (*Warner Bros., supra*, 36 Cal.App.3d at p. 1018.)

The *Warner Bros.* court remanded the matter for a determination as to whether Leeds was in fact the defendants, "ostensible agent to receive service of process." (*Warner Bros., supra*, 36 Cal.App.3d at p. 1019.)

### 3. *Application*

Pursuant to sections 8251 and 8271, Lorraine's demurrer to Barry's postprobate contest was due "within 30 days after service of the summons." (§ 8271, subd. (a); see § 8251 [demurrer must be filed "within the time prescribed in the summons"].) For the reasons that follow, we conclude that Barry's service of the summons and postprobate contest on Attorney Herring on March 10 was effective, and that Lorraine's response was therefore due no later than April 9.

It is undisputed that Barry served Attorney Herring with a copy of his postprobate contest on March 10, and that Barry's postprobate contest *was filed in the very same action* in which Attorney Herring was already representing Lorraine.[16] Applying *Warner Bros.* and *Summers*, the relevant inquiry is whether it was reasonably certain and highly probable that Attorney Herring would inform Lorraine of the service of the postprobate contest. We have little doubt that under the circumstances, it was both reasonably certain and highly probable that Attorney Herring would so inform Lorraine. Indeed, Attorney Herring had a statutory duty to apprise her client of "significant developments in matters with regard to which [Attorney Herring] ha[d] agreed to provide legal services." (Bus. & Prof. Code, § 6068, subd. (m).)[17] The service of process of Barry's postprobate contest unquestionably constitutes a significant development in the case. Because it was reasonably certain and highly probable that Attorney Herring would apprise Lorraine of the March 10 service of the postprobate contest, we conclude that Attorney Herring was, as a matter of law, Lorraine's "ostensible agent to receive service of process." (*Warner Bros., supra,* 36 Cal.App.3d at p. 1019.)

■ We emphasize the narrowness of our holding. In this case we consider only whether service of process on a party's attorney of record is sufficient where the process is issued *in the same case* as that in which the attorney is already representing the party. (Compare with *Warner Bros., supra,* 36 Cal.App.3d at p. 1018 [concluding that party's *prior* relationship with its attorney *may* be sufficiently close that the attorney could be deemed to be the

---

[16] We emphasize that all of the pleadings described in part II., *ante,* 525 including Barry's postprobate contest, Lorraine's petition to probate the 2006 Will, and Barry's, Oliver's, and Blackwell's preprobate contests were filed in the same action, under the same case number (Super. Ct. No. 37-2009-00151875-PR-PW-CTL).

[17] Business and Professions Code section 6068 provides in relevant part:
"It is the duty of an attorney to do all of the following: [¶] . . . [¶]
"(m) To . . . keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services."
Similarly, California Rules of Professional Conduct, rule 3-500 provides: "A member shall keep a client reasonably informed about significant developments relating to the employment or representation . . . ."

party's ostensible agent for service of process of a *new* action] and *Zirbes v. Stratton* (1986) 187 Cal.App.3d 1407, 1413 [32 Cal.Rptr. 653] [court refused to impute knowledge of lawsuit against party for breach of contract where party's attorney in separate divorce suit received notice of the breach of contract lawsuit].) We also note the unusual procedural context in which this case arises. Service of process ordinarily occurs at the outset of a case, before a defendant (or her attorney) has appeared in the action. In those circumstances, service of process is required to obtain personal jurisdiction over the defendant. (See, e.g., *American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 387 [31 Cal.Rptr.3d 99].) However, thereafter, all subsequent pleadings in the action may be served on the defendant's attorney. (Code Civ. Proc., § 465; see also *Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436, 441 [78 Cal.Rptr. 77] ["Commentators have suggested that '[because] the court in which the action is pending has jurisdiction over a defendant who has been properly served with summons [citation], plaintiff need not obtain an additional summons to serve that defendant when the complaint has been amended. . . .' [Citations.]"].) It is only in circumstances such as exist in this case, in which a party and her attorney have already appeared in the action, and as to whom new process against that party related to that same action is issued, that our holding has any applicability. In such a case, we conclude that proper service of process on the party's attorney of record in that same case is sufficient as a matter of law under Code of Civil Procedure section 416.90.

Because Barry's service on Attorney Herring on March 10 constituted proper service, Lorraine's response to Barry's summons and postprobate contest was due no later than April 9, 2010. It is undisputed that Lorraine did not file a response until after April 9. The trial court thus erred in implicitly concluding that Lorraine's demurrer was timely. In addition, because section 8271, subdivision (c) provides that "[i]f a person fails timely to respond to the summons . . . [¶] . . . [¶] . . . [t]he person may not participate further in the contest . . . ," we further conclude that the trial court erred in sustaining Lorraine's untimely demurrer.[18]

---

[18] Even assuming that the trial court had discretion to consider Lorraine's untimely demurrer (see *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 281–282 [54 Cal.Rptr.3d 116] [trial courts may generally exercise discretion to consider late-filed pleadings]), we cannot affirm the trial court's order on this ground because there is nothing in the record to indicate that the trial court exercised such discretion in this case.

Further, the Law Revision Commission comment to section 8271 provides, "Relief from a failure timely to respond or from a judgment in the will contest may be available under Code of Civil Procedure Section 473." (Cal. Law Revision Com. com., Deering's Ann. Prob. Code (2004 ed.) foll. § 8271, p. 354.) Lorraine has not sought such relief in this case, and we express no opinion as to its potential applicability on remand.

Accordingly, we reverse the August 26, 2010 order sustaining Lorraine's demurrer. In light of our reversal of the order sustaining the demurrer, we also reverse the order dismissing Barry's May 2010 petition to probate the 1996 Will.[19]

B. *The trial court erred in concluding that the bar against successive probate contests contained in section 8270 barred Barry's postprobate contest, because the court never adjudicated Barry's preprobate contest*

Barry contends, in the alternative, that the trial court erred in sustaining Lorraine's demurrer to his postprobate contest on the ground that the bar against successive probate contests contained in section 8270 precluded Barry's contest. Assuming for purposes of this opinion that Lorraine's demurrer was timely, we agree that the court erred in sustaining the demurrer on this ground.

1. *Governing law and standard of review*

a. *The law governing demurrers*

We assume for purposes of this decision that a party may assert the bar against successive probate contests contained in section 8270 by way of demurrer. (See generally Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶ 7:9, p. 7(I)-7 (rev. # 1, 2011) ["A demurrer can be utilized where the complaint itself is incomplete or discloses some defense that would bar recovery . . . ." (italics omitted)].) We review a trial court's order sustaining a demurrer de novo. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].)

b. *Relevant Probate Code provisions*

██ Sections 8250 through 8254 outline the procedures that govern a preprobate contest of a will. Section 8252 makes clear that a party has a right to a trial on such a contest:

"(a) At the trial, the proponents of the will have the burden of proof of due execution. The contestants of the will have the burden of proof of lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation. If the will is opposed by the petition for probate of a later will revoking the former, it shall be determined first whether the later will is entitled to probate.

---

[19] At the August 26, 2010 hearing, the court stated that in light of its order sustaining the demurrer, it would quash various subpoenas that Barry had issued in the case. In light of our reversal of the trial court's order sustaining Lorraine's demurrer, the trial court's order quashing the subpoenas is also reversed.

"(b) The court shall try and determine any contested issue of fact that affects the validity of the will."

Sections 8270 through 8272 outline the procedures that govern a postprobate contest of a will, largely by incorporating the procedures that apply to a preprobate will contest. (See § 8271, subd. (b).) Section 8270 provides the time within which a postprobate contest may be filed, and specifies who may bring such a contest. Section 8270 provides in relevant part: "(a) Within 120 days after a will is admitted to probate, any interested person, *other than a party to a will contest and other than a person who had actual notice of a will contest in time to have joined in the contest,* may petition the court to revoke the probate of the will. The petition shall include objections setting forth written grounds of opposition." (Italics added.)

Several courts have interpreted the meaning and purpose of the italicized portion of section 8270, quoted above. In *Estate of Hoover* (1934) 139 Cal.App. 753, 759 [5 P.2d 188], the court considered whether section 8270's statutory predecessor (former § 380) precluded a contestant from filing a postprobate contest where the contestant had filed, but subsequently dismissed, a preprobate contest. The *Estate of Hoover* court concluded that the contestant's postprobate contest was not precluded under such circumstances, reasoning:

"Without question where the contest before probate has been 'determined adversely' it is the intent of [former] section 380 of the Probate Code to prevent another contest after probate. However, where, like in the case at bar, the contest before probate has been dismissed by the contestant before any trial of the issues of the contest as provided by [former] section 371 of the Probate Code, it does not preclude a contest after probate under the aforementioned [former] section 380 of the Probate Code.

"[Former] [s]ection 370 of the Probate Code provides for the contest before probate and [former] section 371 provides how the issues of such contest shall be tried. When the contest is dismissed before trial of the issues there ceases to be a contest; in other words, there has not been a determination of the issues. A contest implies a trial and final judgment. *The mere institution of a contest and dismissal without a trial is not a contest.* [Citations.] The provisions of [former] section 380 of the Probate Code, are intended merely as a prohibition against two successive trials of the same issues." (*Estate of Hoover, supra,* 139 Cal.App. at pp. 759–760, italics added.)

In *Estate of Meyer* (1953) 116 Cal.App.2d 498, 500–501 [51 P.2d 430], the court explained the history and purpose of former section 380: "Prior to 1929 the Code of Civil Procedure relating to contests of wills provided as to

postprobate contests that when a will had been admitted to probate any person interested might contest the same; in 1929 the Legislature enacted the qualifying provisions recited above excluding from the interested persons who might contest after probate those who had been parties to preprobate contests or had had actual knowledge thereof in time to have joined therein. Under the older provisions it often happened that persons entitled to contest wills would, instead of joining in a preprobate contest, withhold their contest until such contest had been determined, benefiting equally with the contestants if the will were defeated, and reserving to themselves a second chance to have the will invalidated by postprobate contest. We think it to have been the purpose of the Legislature in the 1929 amendment to discourage this practice."

The *Estate of Meyer* court concluded that the purpose of former section 380 was to preclude litigants from attempting to litigate probate contests twice: "[I]t is . . . left apparent that the Legislature did not intend to do away with postprobate contests. We think the amendatory legislation was aimed exclusively at those who had full opportunity to contest before probate but preferred to be dilatory, waiting to see what might happen and then filing their contests after probate if disappointed in the outcome of the first contest." (*Estate of Meyer, supra*, 116 Cal.App.2d at p. 501 [concluding that "that the Legislature did not intend that persons who knew of the pendency of the preprobate contest should be excluded from the class of those who might file postprobate contests if those persons had neither actual nor implied knowledge of their right to contest in that they had neither actual nor implied knowledge that they were interested persons"].)

Finally, in *Estate of Horn* (1990) 219 Cal.App.3d 67, 69–70 [68 Cal.Rptr. 41], this court concluded that the rules governing preprobate and postprobate challenges contained in former sections 370 and 380 "should not deprive [a] contestant . . . who timely filed her preprobate contest under section 370 . . . of the opportunity to contest the will postprobate," where the preprobate contest had not been litigated. The contestant in *Estate of Horn* filed a will contest approximately one week before the trial court admitted a will to probate. (*Estate of Horn, supra*, at p. 70.) The trial court admitted the will to probate without considering the contest. (*Ibid.*) After admitting the will to probate, the trial court granted the executor's demurrer to the contest on the ground that the contestant had waived her right to contest the will by failing to comply with various procedural requirements. (*Ibid.*)[20]

---

[20] In its order sustaining the demurrer, the trial court stated, " 'Contestant has waived her right, if any, to proceed with the purported contest on file herein by failure to comply with procedural requirements, including, but not limited to failure to appear at hearing on the petition for probate of will; and, finally, failure to object to the admission of the decedent's will to probate.' " (*Estate of Horn, supra*, 219 Cal.App.3d at pp. 70–71.)

On appeal, this court concluded that the trial court had acted properly in admitting the will to probate given the contestant's failure to make the court aware of its contest. (*Estate of Horn, supra,* 219 Cal.App.3d at p. 72.) The *Estate of Horn* court reasoned, "When the party contesting the will fails to appear or otherwise inform the court of the status of the contest, the court can reasonably conclude the will contest was either amicably resolved or that the contestant had decided to challenge the will under [former] section 380." (*Ibid.*) However, citing the similarities between preprobate and postprobate contests, this court further concluded that the trial court should have granted the contestant's request that the court treat her preprobate contest as a postprobate contest. (*Id.* at p. 73.) Accordingly, the *Estate of Horn* court remanded the matter with directions to overrule the demurrer. (*Ibid.*)

### 2. *Factual and procedural background*

As noted in part II.D., *ante,* on November 19, 2009, the trial court held a hearing on Lorraine's petition to probate the will. Oliver and Attorney Herring appeared at the hearing. At the outset of the hearing, the trial court asked Oliver how soon he could be ready for trial. Oliver responded that he could be ready "within a week or so I think." After further discussion concerning whether there were assets in the estate or rather, whether the assets were all contained in a separate trust, the court again inquired of Oliver as to when he could be ready for trial and how long a trial he contemplated. Oliver stated that he could be ready "right after Thanksgiving," and that he would need "probably two hours." The court then directed a similar inquiry to Attorney Herring.

In responding to the trial court's inquiry, Attorney Herring asserted that Oliver had not raised proper objections to her petition, stating in part, "[Oliver] has not submitted any of his papers in proper format. He has presented no legal arguments. He has not presented his own petition for probate. He has stated no legal grounds to object to my client's appointment as executor under the will." Attorney Herring also objected that Oliver had not properly served her with many of the documents in the case, including the 1996 Will that Oliver was offering to probate. Attorney Herring concluded her remarks by stating, "[A] trial on exactly what topic? I need to know what issue we're putting before the court so I know what witnesses I need to have lined up."

Oliver responded that he had recently had the 1996 Will personally delivered to Attorney Herring's office. As Oliver began to discuss his other attempts to obtain documents, the court stated that Oliver's brother had been involved in some related trust litigation that had been dismissed. According to the court, "I think the issues [Oliver's brother] raised were much the same

that are before the court today. I'm not sure, but I suspect, so all of the assets are in the trust." The court continued, stating that the court was "willing to give [Oliver] a hearing" even though admitting the 1996 Will to probate would not appear to have any practical effect.

Attorney Herring responded: "Your honor, his petition for probate was set for hearing on October 15. He did not show in time. The matter was called twice on the calendar. After being trailed, he did not show. His petition was taken off calendar. [¶] The only petition pending before the court is my client's petition. It has no defects. There are no valid objections filed, and in my opinion, there is no legal ground not to grant [Lorraine's] petition, appoint her executor of the estate under the will [dated] September 13, 2006."

The following colloquy then occurred:

"[The court]: Why don't I do that, sir, and if you want to challenge the will, you can always challenge the will.

"[Oliver]: That's what I'm doing. I'm saying—

"[The court]: No, no, no, no, no. Stop. Stop.

"[Oliver]: Pardon.

"[The court]: What Miss Herring is suggesting is I go ahead and appoint her client. You can always challenge the will. I don't know that you're challenging her appointment."

Oliver responded by again referring to numerous purported defects in the 2006 Will. The court then informed the parties that it was going to grant the petition to probate the will, but stated, in part, "It's frustrating to me because I would like to see a court hearing if there is an issue here, but I suspect the long and short of it is there is no issue here, largely because there [are] no assets . . . ." The court continued, "If the validity of the will is an issue, I think you still have the ability to challenge that, but I do think we need . . . an executrix in place, and I'm going to go ahead and grant the request."

### 3. *Application*

As the above summary of the November 19 hearing makes clear, the trial court admitted the 2006 Will to probate without considering any of the preprobate contests in the record (including Barry's), under the apparent mistaken belief that the contestants could simply file postprobate contests

after the court admitted the 2006 Will to probate.[21] Under these circumstances, section 8270 does not bar Barry's postprobate contest, since the court never adjudicated in any fashion—on the merits or otherwise—any of the preprobate contests.

The purpose of section 8270 is to "prohibit[] . . . *two* successive trials of the same issues." (*Estate of Hoover, supra*, 139 Cal.App. at p. 760, italics added.) However, the trial court's ruling precluded Barry from having *any* trial on his objections to the 2006 Will. There is nothing in the record that would suggest that Barry was "waiting to see what might happen" with Blackwell's and Oliver's preprobate contests "and then filing [his] contest[] after probate if disappointed in the outcome of the . . . [other preprobate] contest[s]." (*Estate of Meyer, supra*, 116 Cal.App.2d at p. 501.) On the contrary, Barry filed his own preprobate contest in which he challenged the validity of the 2006 Will. However, rather than adjudicate Barry's contest or the other preprobate contests, the trial court simply admitted the 2006 Will to probate, under the apparent misconception that the contestants could simply file postprobate contests. In admitting the 2006 Will to probate without considering the preprobate contests, the court in effect treated the preprobate contests as if Barry and the other contestants had voluntarily dismissed their contests. (See *Estate of Hoover, supra*, 139 Cal.App. at p. 760 ["A contest implies a trial and final judgment."].) Under these circumstances, section 8270 does not bar Barry's postprobate contest. (See *Estate of Hoover, supra*, at p. 760; accord, *Estate of Horn, supra*, 219 Cal.App.3d at p. 73 [court erred in failing to grant contestants' request to consider preprobate contest as a postprobate contest where court admitted will to probate without considering preprobate contest].)[22]

---

[21] In the respondent's brief, Attorney Herring states, "After *considering the evidence* and *after lengthy oral argument*, the court granted Lorraine's Petition for Probate and admitted the 2006 Will to probate over the objections filed by Oliver, [Blackwell], and Barry" (italics added), thus suggesting that the court determined the contests on their merits. In support of this statement, the respondent's brief cites (but does not quote) the hearing excerpted above. However, it is abundantly clear from the transcript of the November 19 hearing that the court did not in fact consider the merits of any of the preprobate contests prior to admitting Lorraine's will to probate. Accordingly, we reject the misleading suggestion to the contrary in the respondent's brief.

[22] Noting that the time limit for bringing a postprobate contest is jurisdictional, Lorraine contends that the limitation on persons entitled to bring postprobate contests also "should be considered jurisdictional." The jurisdictional nature of the time limit embodied in section 8270 is statutorily derived (see *Wolfson v. Superior Court* (1976) 60 Cal.App.3d 153, 160 [31 Cal.Rptr. 265] [citing former § 384]; § 8226, subd. (a)), and we are aware of no statute or case law that supports Lorraine's jurisdictional argument. Further, if by "jurisdictional" Lorraine intends to suggest that a court may not consider the purpose of the bar against successive will contests contained in section 8270 in determining its applicability in a particular case, we reject that suggestion as being contrary to the case law discussed in the text.

## IV.

## DISPOSITION

The order sustaining Lorraine's demurrer without leave to amend and dismissing Barry's petition to probate the 1996 Will is reversed. Barry is entitled to costs on appeal as provided in California Rules of Court, rule 8.278(a)(4).

Huffman, Acting P. J., and Haller, J., concurred.