Filed 6/3/25  Harris v. Luntumbuez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| KARIO HARRIS, Plaintiff and Appellant, v. PAUL LUNTUMBUEZ, Defendant and Respondent. | B335247 (Los Angeles County Super. Ct. No. 21STCV27294) **ORDER MODIFYING OPINION AND DENYING REHEARING** (No change in the appellate judgment) |

THE COURT:

It is ordered that the opinion filed herein on May 16, 2025, be modified as follows:

> On page 4, second to the last paragraph, the sentence that reads "Because senior officers 'withheld' the documents, Luntumbuez did not learn of them until the officers presented him with the investigation results on February 13, 2023" is deleted and replaced with:

"Because senior officers 'withheld' the documents, Harris did not learn of them until the officers presented him with the investigation results on February 13, 2023."

There is no change in the appellate judgement.

The petition for rehearing is denied.

_____

FEUER, Acting P. J.          STONE          PULOS, J.*

*          Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2

Filed 5/16/25  Harris v. Luntumbuez CA2/7 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KARIO HARRIS,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>PAUL LUNTUMBUEZ,<br><br>     Defendant and Respondent. | B335247<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV27294) |

———————————

APPEAL from an order of the Superior Court of Los Angeles County, Gail Killefer, Judge.  Affirmed.

Kario Harris, in pro. per., for Plaintiff and Appellant.

Paul Luntumbuez, in pro. per., for Defendant and Respondent.

———————————

Kario Harris challenges the dismissal of his suit against Paul Luntumbuez following the trial court's decision to sustain Luntumbuez's demurrer to Harris's second amended complaint.[1] Harris contends the court erred in concluding Luntumbuez's allegedly false statements—on which Harris's causes of action are based—were protected by an absolute privilege because they were made during an official investigation. He also argues the court wrongly ruled that his claims were time-barred. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Harris's Original and First Amended Complaint, and Luntumbuez's Demurrers*

Harris, a civil servant employed by the United States Army, alleges that, beginning in 2016, Luntumbuez, a human resources specialist at the United States Department of Veterans Affairs in Long Beach, California, falsely accused him of making sexual advances and stalking Luntumbuez. Harris contends his employer sought to terminate his employment in large part based on Luntumbuez's lies about him, and that Luntumbuez's actions

_____

[1]     The trial court's signed order sustaining the demurrer without leave to amend also stated "the case is dismissed with prejudice." No separate order or judgment of dismissal was entered. "An order sustaining a demurrer without leave to amend is not an appealable order, but an order dismissing a case is an appealable order." (*Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1590, fn. 4; see *Bullock v. City of Antioch* (2022) 78 Cal.App.5th 407, 411.) It is appropriate to construe the court's order dismissing the case as an appealable order. (*See Hudis*, at p. 1590, fn. 4.)

2

have interfered with his right to peaceful employment. Harris has been self-represented throughout this case.

Harris filed his original complaint in July 2021, asserting four causes of action: (1) defamation, (2) intentional infliction of emotional distress, (3) intentional interference with prospective economic advantage, and (4) declaratory relief. Harris alleged that "[b]etween the period 2016 and continuing Defendant Paul Luntumbuez communicated to third parties by knowingly false sworn testimony and e-mails that Plaintiff, Harris had made sexual advances toward him; that Harris had touched him on his mid-thigh area during a lunch conversation; had been harassed by Plaintiff Harris; had created a hostile working environment and an unsafe working environment; and had assisted a potential job applicant Hanna Kim with her resume which included some exaggerated experience . . . ; [and] that Harris had bypassed the Human Resources Division in the hiring process." The complaint stated the "slander/defamation occurred at the US Army Garrison Yongsan Seoul South Korea, [and] US Army Reserve Training, Garden Grove California."

After Harris served Luntumbuez with the complaint in November 2022, Luntumbuez demurred on the basis that Harris's claims were barred by the applicable statutes of limitations (one year for defamation and two years for intentional infliction of emotional distress and tortious interference). Luntumbuez also contended that Harris's complaint generally failed to state sufficient facts for the causes of action alleged. The superior court sustained Luntumbuez's demurrer with leave to amend.

In February 2023, Harris filed a first amended complaint, reasserting the same causes of action, and adding allegations of

3

additional false and malicious statements made by Luntumbuez in November and December 2021 and October 2022. The court sustained Luntumbuez's demurrer in May 2023, again concluding the allegations were time-barred and failed to plead allegations sufficient to state any of the causes of action. The court once more granted leave to amend.

B.      *Allegations in the Second Amended Complaint*

In June 2023, Harris filed a second amended complaint (the complaint) alleging that Luntumbuez's "statements against Harris . . . caused an official investigation of Harris" that was "conducted at the direction of the [United States] Army Reserve," Harris's employer. Luntumbuez made all statements "under oath during the course of an official investigation," which made the statements difficult for Harris to find.

The second amended complaint identifies four instances where Luntumbuez allegedly made the defamatory statements:

**October 2017**: Luntumbuez made "defamatory written statements" to an individual named Dr. Christine Altendorf that Harris "exhibited homosexual sexual tendencies toward" him and stalked and harassed him and his family at their California residences. The statements "caused an official investigation" of Harris, and "[t]he written untrue statements . . . were made under oath during the course of an official investigation . . . and [were] difficult for [Harris] to find." Because senior officers "withheld" the documents, Luntumbuez did not learn of them until the officers presented him with the investigation results on February 13, 2023.

**September 2018**: Luntumbuez "revised" the same allegations that Harris engaged in improper sexual conduct

4

towards him. These statements were "withheld" from Luntumbuez until he received a "US postal mailing" on October 27, 2019.

**October 2018**: Luntumbuez repeated the same allegations to a "Fort Irwin Criminal Investigator."

**December 2021**: Luntumbuez "resurfaced the knowingly false and malicious statements of September 2018" to senior Army Reserve individuals at Fort Bragg, North Carolina. He reiterated that Harris "exhibited homosexual sexual tendencies toward" him, sent him "sweet" text messages, and touched him on his mid-thigh area. Luntumbuez added that Harris stalked and harassed him and his family in Texas and suggested that Harris traveled to Saudi Arabia and Long Beach to see him. These statements were false because Harris had never visited Luntumbuez's or his family's residences, schools, or workplaces. Luntumbuez also asserted that Harris violated hiring practices by helping a job applicant exaggerate her experiences on her resume and that Harris used "unauthorized access to US government Human Resources systems" to find Luntumbuez's home address. This was false because Luntumbuez knew Harris only had access to records of the members of his own division. Harris first learned of these statements when the investigation results were reported to him on February 13, 2023.

**October 2022**: Luntumbuez reported to "third parties in senior positions of the US Army Reserve" that Harris was again stalking him and his family and was harassing him "in the form of civil court summons."

Harris sought economic damages of at least $2.125 million, noneconomic damages of at least $3 million, and punitive

damages of at least $6 million.  Harris also sought a declaration that Luntumbuez's statements were defamatory and false.

C.     *The Demurrer Ruling and Case Dismissal*

In October 2023, over Harris's opposition, the superior court sustained Luntumbuez's demurrer without leave to amend and dismissed the case with prejudice.

The court ruled that Harris's first cause of action for defamation, based on the 2017 and 2018 statements, was barred by the statute of limitations.  The court further concluded that all the relevant statements were protected by the privilege under Civil Code section 47.  Harris's second amended complaint asserted the 2017 and 2021 statements "were made under oath during the course of an official investigation;" the 2021 and 2022 statements were made "in sworn testimony and emails;" and the 2018 statement, which "revised" the 2018 statement, was "provided to third party, Fort Irwin Criminal Investigator."

The court also sustained Luntumbuez's demurrer to Harris's second cause of action for intentional infliction of emotional distress and third cause of action for intentional interference with prospective economic advantage without leave to amend, reasoning that both claims were based on the same privileged statements.  Because the court had dismissed Harris's substantive claims, it found no present controversy to support declaratory relief and sustained the demurrer to that claim as well.  The court denied further leave to amend.[2]

---

[2]     Harris failed to designate Luntumbuez's demurrer, his previous complaints, or the trial court's orders on the first two demurrers as part of the appellate record.  We requested these

6

Harris timely appealed.

## DISCUSSION

A.   *Applicable Law and Standard of Review*

Code of Civil Procedure section 430.10, subdivision (e), authorizes a demurrer on the ground that the complaint " 'does not state facts sufficient to constitute a cause of action.' " (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)

" '[W]here the existence of a privilege is revealed on the face of the complaint, it may be asserted in a demurrer.' " (*Green v. Cortez* (1984) 151 Cal.App.3d 1068, 1072-1073; see generally *Estate of Moss* (2012) 204 Cal.App.4th 521, 535 [" 'A demurrer can be utilized where the complaint itself is incomplete or discloses some defense that would bar recovery.' "].)  Likewise, the statute of limitations may be asserted by such a general demurrer if the defect clearly and affirmatively appears on the face of the complaint.  (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; see *Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 326.)

On appeal, we independently review the judgment of dismissal and accept as true all material allegations in the complaint, "but do not 'assume the truth of contentions, deductions or conclusions of law.' " (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc., supra*, 2 Cal.5th at p. 512; see *New Livable California v. Association of Bay Area Governments* (2020) 59 Cal.App.5th 709, 714.)  We "determine de novo whether the

---

pleadings from the superior court and augment the record on our own motion.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)

complaint alleges facts sufficient to state a cause of action or discloses a complete defense." (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.)

We review a trial court's failure to grant leave to amend for abuse of discretion. (*Moore v. Centrelake Medical Group, Inc.* (2022) 83 Cal.App.5th 515, 537.) In so doing, "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; see *Ivanoff v. Bank of America, N.A.*, *supra*, 9 Cal.App.5th at p. 735.)

B.      *Harris's Causes of Actions Are Based on Privileged Statements*

Harris contends the superior court erred in ruling Luntumbuez's "knowingly false and malicious statements were privileged communications" under Civil Code section 47 (section 47).

As pertinent here and with some exceptions, section 47 provides that a "privileged publication or broadcast is one made . . . [i]n the proper discharge of an official duty," and "[i]n any . . . official proceeding authorized by law" or "in the initiation or course of any . . . proceeding authorized by law." (Civ. Code § 47, subds. (a), (b); see *Howard Jarvis Taxpayers Assn. v. Powell* (2024) 105 Cal.App.5th 955, 971 ["[S]ection 47, subdivision (b) provides absolute immunity for publications and statements made in an 'official proceeding authorized by law.' "].) The

8

privilege bars all tort liability based on a qualifying statement, except the tort of malicious prosecution. (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 (*Hagberg*); see *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.) The privilege applies to "communications intended to instigate official investigation into wrongdoing." (*Hansen v. California Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1546-1547 [where allegedly false statements were communicated to CDCR officials as part of an internal investigation, they were absolutely privileged]; see *Hagberg*, at p. 362.)

The complaint contends Luntumbuez made the actionable statements "under oath during the course of an official investigation" that was "conducted at the direction of the US Army Reserve." Thus, the alleged statements fall within the absolute privilege.

On appeal, Harris contends that the privilege does not apply because Luntumbuez made *deliberately* false and defamatory statements. However, subject to one relatively recent exception that is not applicable here, the privilege applies "without respect to the good faith or malice of the person who made the statement." (*Hagberg*, *supra*, 32 Cal.4th at p. 361; see *Kilgore v. Younger* (1982) 30 Cal.3d 770, 778; *Hansen v. California Department of Corrections & Rehabilitation*, *supra*, 171 Cal.App.4th at p. 1546.)

The recent exception to section 47 was created by a 2020 amendment to section 47. (§ 47, subd. (b)(5), Stats. 2020, ch. 327, § 2, eff. Jan. 1., 2021.) It provides that false reports to "a law enforcement agency" that another person "has committed . . . a criminal act or is engaged in an activity requiring law enforcement intervention" are not privileged if the speaker makes

9

the report knowing it is false, or with reckless disregard for the truth or falsity of the report. (*Ibid.*)

One set of the defamatory statements alleged by Harris — vaguely described only as statements to a "Fort Irwin Criminal Investigator" — potentially could fall within this exception to the absolute privilege. But those statements allegedly were made in October 2018, and the amendment was not effective until 2021. There is no indication the Legislature intended the amendment to apply retroactively. (See *Quarry v. Doe I* (2012) 53 Cal.4th 945, 955 ["statutes ordinarily are interpreted as operating prospectively in the absence of a clear indication of a contrary legislative intent."].) Thus, the amendment would not apply to the statements made to the criminal investigator. And under the pre-2021 version of the statute applicable to Luntumbuez's 2018 statements, even knowingly false statements to a law enforcement agency are subject to the absolute privilege. (*Hagberg*, *supra*, 32 Cal.4th at p. 364 [applying pre-2021 law and finding communications made to "law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond" enjoyed "an unqualified privilege" under section 47].)[3]

---

[3]    Even if Luntumbuez's October 2018 statements to a criminal investigator could fall within the law enforcement exception under section 47, subdivision (b)(5), and even if the Legislature's amendment applied retroactively to exempt the statement from the privilege, all of Harris's causes of action based on this statement would be time-barred. The statute of limitations is one year for defamation (Code Civ. Proc., § 340, subd. (c)) and two years for both intentional infliction of emotional distress and intentional interference with prospective

Thus, all of Luntumbuez's alleged statements were absolutely privileged, barring each of Harris's causes of action.

Regarding leave to amend, " 'the burden is on plaintiff to show *in what manner* plaintiff can amend the complaint, and *how* that amendment will change the legal effect of the pleading[.'] Although 'such showing may be made in the first instance to the appellate court,' the . . . appellant 'must still offer details on how the amendment would cure the defects.' " (*Moore v. Centrelake Medical Group, Inc.*, *supra*, 83 Cal.App.5th at p. 537; accord, *Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1145.) "Where the appellant offers no allegations to support the possibility of amendment . . . , there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44.) Harris has made no showing of how he could amend his complaint to cure its defects. The superior court did not err in sustaining Luntumbuez's demurrer without leave to amend.

/ / /

---

economic advantage (Code Civ. Proc., § 335.1; *Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 852-853). Unlike for most of Luntumbuez's statements, Harris does not allege that his discovery of the October 2018 statements was delayed. Harris filed his original complaint in July 2021, outside of the relevant statute of limitations periods.

11

## DISPOSITION

The order of dismissal is affirmed.  Luntumbuez is entitled to recover his costs on appeal.

STONE, J.

We concur:

FEUER, Acting P. J.

PULOS, J.[*]

---

[*] Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.