Filed 6/13/13; pub. order 7/15/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

RUTH E. ABERS et al.,

    Plaintiffs and Appellants,

        v.

VERA C. ROHRS, as Cotrustee, etc., et al.,

    Defendants and Respondents.

G047034

(Super. Ct. No. 30-2012-00546927)

O P I N I O N

         Appeal from a judgment of the Superior Court of Orange County, Nancy Wieben Stock, Judge. Affirmed.

         Snell & Wilmer, Richard A. Derevan, Todd E. Lundell and Christopher B. Pinzon for Plaintiffs and Appellants.

         Palmieri, Tyler, Wiener, Wilhelm & Waldron, Michael H. Leifer, Erin Balsara Naderi; Bullard, Brown & Beal and Timothy W. Brown for Defendants and Respondents.

The owners of 57 homes in a condominium development (the homeowners) appeal from an order dismissing their petition to vacate an arbitration award setting the allowable increases in monthly rent charged by the trust that owns the property on which their homes are situated. The trial court's dismissal order was based on the homeowners' failure to properly serve the respondent trustees with their petition to vacate within 100 days of service of the award, as required by Code of Civil Procedure section 1288. (All further statutory citations are to this code unless otherwise indicated.)

The homeowners argue the trial court erred in dismissing their petition because: (1) the petition was served in accordance with the requirements of the parties' lease agreements, and thus was properly served under section 1290.4; (2) the court abused its discretion by refusing to treat the petition as part of a previously filed and still pending declaratory relief action between the parties; (3) the court abused its discretion by refusing to find that the trustees were estopped from asserting service was improper; and (4) the homeowners were entitled to relief from the dismissal pursuant to section 473. We find none of these contentions persuasive and affirm the order.

The homeowners' reliance on section 1290.4 fails because the lease provisions they rely upon as specifying the method for serving the petition to vacate apply only to the manner in which *notices* respecting the leases may be *sent*. Those provisions say nothing about the manner in which a party may be *served with process* in connection with a petition to vacate an arbitration award, to establish the court's personal jurisdiction over the party. Merely providing a party with notice that a petition has been filed does not establish personal jurisdiction.

Further, the court did not abuse its discretion by refusing to treat the petition as though it had been filed under the still-pending declaratory relief case number, because the homeowners themselves acknowledge they made a deliberate, *strategic* decision not to do that. Equity certainly does not *obligate* the court to pretend the homeowners made the opposite strategic decision. Likewise, equity does not compel a

2

finding that the trustees are estopped from claiming service was improper. The requirements for service are established by statute, and equity does not prohibit a party from demanding adherence to those legal requirements.

And finally, we agree with the trustees that section 473 cannot be relied upon to relieve a party from its failure to comply with the 100-day deadline for filing and serving a petition to vacate an arbitration award. That deadline operates in the same manner as the deadline for filing an appeal, and the court loses jurisdiction to vacate the award if the petition is not timely served and filed. Once jurisdiction is lost, it cannot be retroactively reinstated.

FACTS

This case involves a dispute over a provision in a series of identical ground leases underlying a condominium development. The property is owned by the trustees of the John and Vera B. Rohrs Trust, Dated May 16, 1961, and the terms of the leases specify payment of a fixed monthly rent for the land under each unit for initial 30 years and six months of the 70-year lease term, but thereafter allow the rents to be adjusted based on a re-valuation of the "leased land." If the parties are unable to agree on the proper amount of a rent adjustment, the issue was to be resolved by arbitration.

Unfortunately, the parties could not even agree on the definition of the "leased land" to be valued, and thus initially sought declaratory relief from the court to resolve that issue. In a published opinion, this court declared that the leased land to be valued was defined as "each lessee's interest in his or her individual condominium unit . . . and his or her undivided fractional interest in the common areas within parcel one or parcel three, depending upon whether the unit is located in first or second phase of the project." (*Abers v. Rounsavell* (2010) 189 Cal.App.4th 348, 363-364.)

The parties thereafter participated in the arbitration, and the arbitrators announced their decision on December 13, 2011. According to the homeowners, the arbitrators' decision was inconsistent with both this court's interpretation of the pertinent lease provisions and its declaration of the parties' rights in connection therewith. The homeowners claim the arbitrators' decision resulted in a "27-fold increase" in their average lease payments, and required each of them to make a retroactive lease payment of between $70,000 and $90,000. They characterize the award as "devastating" to them.

Two days after the arbitrators issued their decision, the trustees filed an ex parte application with the trial court which had presided over the declaratory relief action, seeking an order "vacat[ing] further proceedings under this case number" because "some of the lessees *may attempt* to file papers *in this action* seeking to vacate . . . the award." The homeowners opposed the ex parte application, arguing the court properly retained "vestigial jurisdiction" over the matter submitted to arbitration, which included jurisdiction to confirm, correct or vacate the award. (Citing *SWAB Financial, LLC. v. E*Trade Securities LLC.* (2007) 150 Cal.App.4th 1181, 1200-1201.) The court denied the motion on the ground the issue was not ripe until someone actually attempted to file such a petition.

On February 17, 2012, the homeowners filed their petition to vacate, choosing to do so under a new case number, rather than in the still-pending declaratory relief case. According to their opening brief on appeal, they did so because the court's refusal to issue a definitive ruling on whether it was proper to file the petition under the old case number "left uncertainty about whether the trial court understood the nature of its vestigial jurisdiction over the arbitration and meant that further litigation over that issue was inevitable." Consequently, "*[t]o avoid spending the homeowners' limited resources litigating over such a tangential issue, the homeowners filed the petition to vacate under a new case number.*" (Italics added.)

Unfortunately, despite their decision to file the petition as a separate case, the homeowners purported to serve it on the trustees in the manner that would normally be used for a motion in a pending case – by overnight delivery to the trustees' counsel, one of whom they explain is also a successor trustee. On March 22, the homeowners served an amended petition to vacate, again by overnight delivery on the same counsel. Four days later, on the 100th day after the arbitration award was served, the trustees' counsel informed the homeowners he was not authorized to accept service of the petition by mail. The following day, the attorney identified as successor counsel who informed the homeowners he would not accept mail service.

Shortly thereafter, the trustees moved to quash service and sought an order dismissing the petition on the ground the homeowners failed to properly serve the petition within 100 days of the arbitrator's award as required by section 1288. Over the homeowners' strenuous opposition, the court granted the motion.

## DISCUSSION

*1. Service of Petition by Mail was Insufficient to Confer Jurisdiction over Trustees*

Section 1288 requires that "[a] petition to vacate an [arbitration] award . . . shall be served and filed not later than 100 days after the date of service of a signed copy of the award on petitioner." Section 1286.4 limits the court's power to vacate an award, stating that a "court *may not vacate an award unless*: [¶] (a) A petition or response requesting the award be vacated *has been duly served and filed*; or [¶] (b) A petition or response requesting that the award be corrected *has been duly served and filed and*: [¶] . . . [¶] (2) All petitioners and respondents have been given reasonable notice that the court will be requested at the hearing to vacate the award or that the court on its own motion has determined to vacate the award and all petitioners and respondents have

5

been given an opportunity to show why the award should not be vacated." (Italics added.)

The requirements for serving a petition to vacate an arbitration award are governed by section 1290.4, which specifies that "[a] copy of the petition and a written notice of the time and place of the hearing thereof and any other papers upon which the petition is based *shall be served in the manner provided in the arbitration agreement for the service of such petition and notice*." (§ 1290.4, subd. (a), italics added.) However, *"[i]f the arbitration agreement does not provide the manner in which such service shall be made* and the person upon whom service is to be made has not previously appeared in the proceeding and has not previously been served in accordance with this subdivision: [¶] (1) *Service* within this State *shall be made in the manner provided by law for the service of summons in an action*." (§ 1290.4, subd. (b), italics added.)

The homeowners first argument is that their service of the petition by overnight mail was appropriate under section 1290.4, subdivision (a), because it substantially complied with Paragraph 16 of the ground leases which includes a provision stating that "written notice[s] . . . respecting this Lease" may be "sent by certified or registered mail" to a specified address. Their argument fails because it conflates the concept of *providing notice* with the concept of *serving process*.

Proper *service of process* of a petition or complaint is the means by which a court obtains personal jurisdiction over a party. (*In re Jennifer O*. (2010) 184 Cal.App.4th 539, 547 ["a court acquires jurisdiction over a party by proper service of process or by that party's general appearance"].)

The obligation to serve a party with process is not coextensive with merely providing the party with *notice* of the proceeding. Even undisputed *actual* notice of a proceeding does not substitute for proper *service* of the petition or complaint. (*Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1049 ["The fact that the person served 'got the word' is irrelevant"]; *In re Abrams* (1980) 108 Cal.App.3d 685, 693

6

["Mere knowledge of the action is not a substitute for service, nor does it raise any estoppel to contest the validity of service"].)

Paragraph 16 of the parties' leases, which governs only the manner in which "notices" may be "sent," says nothing at all about the manner in which a petition to vacate an arbitration award must be *served.* The homeowners' compliance with that provision would consequently demonstrate nothing more than that the trustees were aware both that the petition had been filed, and of the date of the hearing. Significantly, however, it would not demonstrate the court had gained *jurisdiction* over the trustees so as to permit it to render a binding decision with respect to the petition. "Actual notice of the action alone . . . is not a substitute for proper service and is not sufficient to confer jurisdiction." (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 392; see also, *Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 414 ["No California appellate court has gone so far as to uphold a service of process solely on the ground the defendant received actual notice when there has been a complete failure to comply with the statutory requirements for service"].)

Because Paragraph 16 of the parties' leases governs only *notice*, and not *service* it does not qualify as a provision which specifies the manner in which a petition to vacate an arbitration award may be *served*. Consequently, the homeowners' reliance on those notice provisions as a means of demonstrating proper service of the petition necessarily fails.

Nor can the homeowners rely on *Estate of Moss* (2012) 204 Cal.App.4th 521 (*Moss*), as precedent demonstrating mail service of their petition was appropriate here. In *Moss*, a probate case was initiated by the decedent's wife when she filed a petition to probate decedent's will. Decedent's son and grandson later filed a separate petition seeking removal of the will from probate, which would ordinarily require service in the manner of a summons. However, they filed their separate petition under the same case number as the wife's original petition, and served it on her attorney of record as the

7

functional equivalent of a cross-complaint. (See § 465 ["Except with leave of the court, all pleadings subsequent to the complaint, together with proof of service unless a summons need be issued, shall be filed with the clerk or judge, and copies thereof served upon the adverse party or his or her attorney"].)

Although the trial court agreed with the wife's assertion that service in such a manner had been inadequate to establish the court's jurisdiction over her in connection with the second petition, the Court of Appeal did not. It concluded instead that "in circumstances such as exist in this case, in which a party and her attorney *have already appeared in the action, . . .* proper service of process on the party's attorney of record in that same case is sufficient as a matter of law under Code of Civil Procedure section 416.90." (*Moss, supra*, 204 Cal.App.4th at p. 534, italics added.)

However, the court in *Moss* took pains to "emphasize the narrowness of our holding" (*Moss, supra*, 204 Cal.App.4th at p. 533), explaining that it was expressly limited to circumstances in which the party to be served with the new petition had already appeared in the action. Unfortunately for the homeowners here, this case is distinguishable on that very point. Because the homeowners chose to file their petition to vacate as a separate action, rather than as part of the existing declaratory relief case in which the trustees had previously appeared, *Moss* is of no assistance to them.

Nor could we extend the rationale of *Moss* to these distinct circumstances without running afoul of statute. As we have already noted, section 1290.4 sets forth the procedures to be followed in serving a petition to vacate an arbitration award, and the narrow rule set forth in *Moss* is exactly consistent with those required procedures. Specifically, section 1290.4, subdivision (b)(1) creates an exception from the general requirement that the petition be served within this state "in the manner provided by law for the service of summons" in the case of service on a person who has "*previously appeared in the proceeding.*" (§ 1290.4, subd. (c).) Because the homeowners chose to file their petition to vacate as a new proceeding, that exception could not be applied.

8

*2. Trial Court's Refusal to Grant Equitable Relief*

Appellants next argue the trial court was essentially obligated to either "deem the petition to vacate to have been filed under the original [declaratory relief] case number," so as to bring it within the exception of section 1290.4, subdivision (c), or hold that the trustees were estopped from asserting that service of the petition by certified mail had been improper. These are, to say the least, difficult arguments to make. The trial court's discretion to grant or deny equitable relief is broad, and we must indulge all inferences in favor of its decision. "Equity or chancery law has its origin in the necessity for exceptions to the application of rules of law in those cases where the law, by reason of its universality, would create injustice in the affairs of men." (*Estate of Lankershim* (1936) 6 Cal.2d 568, 572-573.) Thus, "[f]rom the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees . . . . It is of the very essence of equity that its powers should be so broad as to be capable of dealing with novel conditions." (*Bechtel v. Wier* (1907) 152 Cal. 443, 446.)

The homeowners' assertion that they are entitled to have their petition treated as though it had been filed within the declaratory relief action is apparently based on the notion they had the right to proceed in that fashion, despite the trustees' contrary contention and the trial court's equivocal ruling on the point. In support of their position, the homeowners have requested we take judicial notice of documents reflecting that the court which presided over the declaratory relief action was kept apprised of the arbitration's progress. We deny that request.

Whatever theoretical right the homeowners may have had to pursue their petition within the framework of the existing declaratory relief case is irrelevant, since they have frankly acknowledged making a deliberate, strategic decision not to do that. Instead, despite the homeowners' awareness of that option, and their emphatic belief in its propriety, they *chose* to file their petition to vacate as a separate proceeding rather than waste resources arguing about whether it might properly be filed as part of the existing

9

case.  That deliberate choice precludes any determination that the court abused its discretion by refusing to pretend they had done the opposite.  Stated simply, holding the homeowners to the consequences of their voluntary election creates no injustice.

As to the assertion that the trustees should be estopped to deny that service was proper, we agree with the trial court.  There is no basis in equity to estop the trustees from demanding compliance with legal requirements for service of process.  As our Supreme Court has repeatedly emphasized, a finding of estoppel requires some act or representation by the party to be estopped, on which the party seeking estoppel has relied to its detriment:  "[t]he doctrine of equitable estoppel is founded on concepts of equity and fair dealing." (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725.)  "The essence of an estoppel is that the party to be estopped has by false language or conduct 'led another to do that which he [or she] would not otherwise have done and as a result thereof that he [or she] has suffered injury.'"  (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 16; *Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1315.)

Here, the homeowners base their estoppel argument on the parties' "course of dealing over seven years of litigation in which counsel accepted mail service on behalf of the [trustees]," and the trustees' failure to *alert* the homeowners that their service of the petition to vacate did not comply with the requirements of law before the 100-day deadline passed.  The homeowners' claim this "lull[ed]" them into a "false sense of security" and "induced" them into believing their service effort had been adequate.  We reject the argument.

Significantly, the homeowners' conclusory characterization of the parties' long "course of dealing . . . in which counsel accepted mail service on behalf of the [trustees]" is unsupported by any examples of the trustee's counsel agreeing to accept initial *service of process* by mail on behalf of the trustees.  The mere fact that once the trustees *had appeared* in litigation, future notices and documents filed in the case were

10

served on them via their counsel of record establishes nothing.  After a party has appeared in litigation and designated a counsel of record, the general rule is that future pleadings and notices may be served on that counsel.  (See, §§ 465, 1010 ["Notices and other papers may be served upon the party or attorney in the manner prescribed in this chapter, when not otherwise provided by this code"].)  Again, initial service of process on a party and the mere provision of notice are not the same thing.

Moreover, whatever prior course of conduct may have been followed, the trustees' ex parte effort, in the immediate wake of the arbitration award, to obtain a court order requiring that any petitions to vacate the award would have to be filed as a separate action (rather than under the case number of the existing declaratory relief action) probably should have been a tip-off that the trustees had no intention of cooperating in an effort to vacate that award.  Under these circumstances, we could not conclude the trial court erred by rejecting the homeowner's claim they were reasonably misled by the parties' past practice of serving documents on counsel.

As for the homeowners' claimed reliance on the trustees' failure to *point out* their error in service, that assertion is undercut by the fact the homeowners were at all times represented by counsel.  "[T]he law 'particularly' disfavors estoppels 'where the party attempting to raise the estoppel is represented by an attorney at law.'"  (*Steinhart v. County of Los Angeles, supra*, 47 Cal.4th at p. 1316.)  This is so because "[f]or purposes of analyzing estoppel claims, attorneys are 'charged with knowledge of the law in California.'"  (*Ibid*.)  Thus, in *Tubbs v. Southern Cal. Rapid Transit Dist.* (1967) 67 Cal.2d 671, 679, our Supreme Court flatly rejected the notion that a plaintiff who was at all relevant times represented by counsel, could have been "induced to delay the filing of her complaint in reliance" on defendant's acts.  We apply the same reasoning here as well.  It was the responsibility of the homeowners' counsel to determine the legal requirements for serving their petition to vacate, and they could not reasonably rely on their opponents to apprise them when that effort fell short.

11

*3. Appellants Right to Relief under Section 473*

The homeowners' final contention is that the court erred by refusing to grant them relief under section 473, subdivision (b), which provides the court with *discretionary power* to "relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect," and also *requires the court* "whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, [*to*] *vacate any . . . resulting default judgment or dismissal entered against his or her client*, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (*Ibid.*, italics added.)

Section 473's provision for mandatory relief from a dismissal based upon a declaration of attorney error does not require a determination the error was excusable. It applies even when the attorney has no excuse. "'Relief is mandatory when a complying affidavit is filed, even if the attorney's neglect was inexcusable.'" (*SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 516-517.)

However, respondents counter that section 473 is inapplicable here, because the 100-day limitation for a petition to vacate a arbitration award is jurisdictional and section 473 cannot be relied upon to excuse a party's failure to comply with a jurisdictional statute of limitations. We agree.

"Notwithstanding the broad construction afforded section 473, subdivision (b), the statute does not offer relief from mandatory deadlines deemed jurisdictional in nature." (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 372 (*Maynard*).) Generally, section 473 does not apply "to a party's failure to comply with the applicable limitations period in which to institute an action," nor can it "extend the time in which a party must move for a new trial." (*Ibid.*) "The time limits that are not subject to relief under section

473, subdivision (b), include, among others, statutes of limitations (*Castro v. Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927, 933 [Code Civ. Proc., § 340.5]; *Hanooka v. Pivko* (1994) 22 Cal.App.4th 1553, 1563 [same]; *Kupka v. Board of Administration* (1981) 122 Cal.App.3d 791, 794-795 [Gov. Code, § 11523]) and the time to file a notice of intention to move for a new trial (*Union Collection Co. v. Oliver* (1912) 162 Cal. 755, 756-759; *Kisling v. Otani* (1962) 201 Cal.App.2d 62, 67-68, 71) or to set aside a judgment under section 663 (*Advanced Building Maintenance v. State Comp. Ins. Fund* (1996) 49 Cal.App.4th 1388, 1394)." (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 344.)

The same rule applies to the deadline for filing an appeal. "The requirement as to the time for taking an appeal is mandatory, and the court is without jurisdiction to consider one which has been taken subsequent to the expiration of the statutory period. In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal, even to relieve against mistake, inadvertence, accident, or misfortune." (*Stuart Whitman, Inc. v. Cataldo* (1986) 180 Cal.App.3d 1109, 1113.)

The rule must be applied here as well. The trial court's power to vacate an arbitration award is governed by statute, and the deadline for seeking such relief is mandatory. In the absence of some *other* statutory authority, the court simply cannot extend that deadline.

Moreover, the mere fact the homeowners actually *filed* their petition to vacate in a timely fashion does not alter the analysis. Section 1286.4 specifically limits the court's authority to vacate an award to situations where a petition to vacate or correct the award has been "*duly served* and filed." (§ 1286.4, subds. (a), (b), italics added.) In the absence of such service and filing, the court has no option but to confirm the award if requested to do so within four years of its issuance. (§ 1286.) And in *Bernasconi Commercial Real Estate v. St. Joseph's Regional Healthcare System* (1997) 57

13

Cal.App.4th 1078, 1081-1082, the court held that section 473 is equally inapplicable to a claim for relief from a litigant's failure to timely *serve* a properly filed complaint, as mandated by statute.

As the *Bernasconi* court explained, the problem with applying section 473 relief in a case where a party has failed to timely serve a complaint, is that it would "effectively abrogate the . . . dismissal statutes, since few if any dismissals under those statutes would ever be final." (*Bernasconi Commercial Real Estate v. St. Joseph's Regional Healthcare System, supra,* 57 Cal.App.4th at p. 1082.) Of course, the same is true here. In nearly every case where a party is represented by counsel, a failure to timely serve a petition to vacate an arbitration award would be attributable to counsel's error. And if section 473 relief were extended to provide relief for such an error, then it follows that relief would be *mandated* in nearly every case, without regard to the excusability of counsel's conduct. The result would be an effective nullification of the statutory 100-day limitation on filing and serving a petition to vacate. We cannot endorse such a result.

We recognize, of course, that the homeowners cite two cases, *De Mello v. Souza* (1973) 36 Cal.App.3d 79 (*De Mello*), and *Elden v. Superior Court* (1997) 53 Cal.App.4th 1497, as support for the proposition that section 473 does provide relief from a party's failure to comply with the 100-day deadline for filing and serving a petition to vacate and arbitration award. A third case, *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 746, states the same proposition: "Of course, a party with a reasonable excuse for failing to comply with the 100-day time limit may obtain relief in a trial court under section 473, subdivision (b)." We find none of those cases persuasive, however, for the simple reason that none of them makes any effort to persuade. *De Mello* simply states, without explanation, that relief from the 100-day limitation "may be granted only under section 473 and/or pursuant to the inherent equitable power of the court, and only in strict compliance with the requirements outlined therein. (*De Mello, supra*, 36 Cal.App.3d at p. 84.) The other cases merely repeat the notion, but again

14

without analysis.  None of the cases actually accords a party relief under section 473, because in each case the request was deemed untimely under *that* section.  In our view, these cases are simply inconsistent with the rule announced by the Supreme Court in *Maynard*, and must be rejected on that basis.

In light of the foregoing, we conclude the trial court did not err in refusing to grant the homeowners relief under section 473 from their failure to properly serve their petition to vacate the arbitration award.

DISPOSITION

The judgment is affirmed.  Respondent trustees are entitled to their costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.

15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RUTH E. ABERS et al., | |
| Plaintiffs and Appellants, | G047034 |
| v. | (Super. Ct. No. 30-2012-00546927) |
| VERA C. ROHRS, as Cotrustee, etc., et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

Respondents requested that our opinion filed on June 13, 2013, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.

16