Filed 3/30/15  Tung v. Cal. Mortgage and Realty CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOHN LE TUNG,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA MORTGAGE AND REALTY, INC.,<br><br>        Defendant and Respondent. | A140659<br><br>(Alameda County<br>Super. Ct. No. RG 10 501900) |

**I.**

**INTRODUCTION**

John Le Tung appeals a judgment confirming an arbitration award in favor of California Mortgage and Realty, Inc.  The arbitrator denied appellant relief on his claims against respondent arising out of a 2005 construction loan.  Appellant contends the judgment must be reversed because (1) the trial court erred by compelling him to submit his claims against respondent to arbitration; and (2) the arbitrator committed misconduct. We affirm.

**II.**

**STATEMENT OF FACTS**

**A.  Background**

In 2001, appellant commenced a development project at commercial property he owned on 12th Street in Oakland, California (the 12th Street property).  Appellant obtained financing for his project from Roger and Loretta Woo.  The Woos were later

1

named as defendants in this case, but their involvement with appellant is not relevant to the arbitration award that is the subject of this appeal.

In the fall of 2005, appellant needed a new source of funding to complete his construction project and employed a mortgage broker, Executive Mortgage, to help him secure that funding. Acting on the advice of his broker, appellant transferred his 12th Street property to Saigon Plaza Associates, LLC, a limited liability corporation (Saigon) of which he became a member and manager. Shortly thereafter, Saigon obtained a $5.75 million construction loan from CMR Mortgage Fund, LLC (the Lender).

Respondent was the Lender's broker for the 2005 loan. Appellant signed a September 30, 2005 letter agreement in which respondent summarized the material terms of the transaction. That letter agreement contained the following arbitration provision: "All disputes between the parties and their respective officers, directors, agents, and employees arising out of this Agreement or relating to the Loan shall be determined by binding arbitration . . . ."

The 2005 loan was evidenced by an October 17, 2005 promissory note appellant signed as the "Managing Member" of Saigon, and was secured by a deed of trust on the 12th Street property (the 12th Street DOT), which named respondent as trustee with the power of sale for the benefit of the Lender. Appellant was also one of Saigon's five guarantors for the 2005 loan. Appellant signed a "General Guaranty and Indemnity Agreement" (Guaranty) in favor of the Lender "in an individual capacity." In addition, appellant personally executed a deed of trust securing the 2005 loan which applied to his residential property on Masonic Avenue in Albany, California (the Masonic DOT). The Masonic DOT named respondent as trustee with the power of sale for the benefit of the Lender.

The parties involved in the 2005 loan transaction also entered into a stand-alone "Arbitration Agreement." This agreement provided that, the Borrower (Saigon), the Company (respondent) and the Lender all agreed that "any Dispute involving the Loan, including, but not limited to claims arising from the origination, documentation, disclosure, servicing, collection or any other aspect of the Loan transaction or the

2

coverage or enforceability of this Agreement, shall be resolved exclusively by binding arbitration under the terms of this Agreement.  This Agreement shall also be binding on the agents, successors and assigns of the parties and the Loan."

The arbitration agreement was signed by appellant as the managing member of Saigon and by representatives of the Lender and respondent.  Appellant and the other guarantors of the 2005 loan also signed this arbitration agreement above lines identifying each of them by name.

In August 2006, respondent recorded a notice of default and election to sell the 12th Street property.  The following month, appellant on behalf of Saigon and respondent on behalf of the beneficiaries of the 2005 loan entered into a "Forbearance Agreement and Release," which temporarily resumed construction funding and forestalled the foreclosure proceedings.  However, respondent recorded another notice of trustee's sale in December 2006.

Saigon filed for bankruptcy to prevent completion of the foreclosure, and all of the guarantors of the 2005 loan, including appellant, also filed personal bankruptcy cases.  Respondent obtained relief from the automatic stay in Saigon's bankruptcy case and completed the foreclosure sale of the 12th Street property in 2009.

In January 2010, respondent, Saigon and the guarantors of the 2005 loan other than appellant executed a "Compromise Agreement and Release" of all claims arising out of the 2005 loan.  This January 2010 settlement agreement provided, among other things, that the guarantors would pay respondent $1.25 million.  The parties also executed general releases, with Saigon acting on its own behalf and on behalf of its "members." However, respondent and the guarantors reserved their right to assert claims against appellant personally who elected not to participate in the settlement.

Appellant's Chapter 11 case was dismissed on February 24, 2010.

## B.  Appellant's Lawsuit

In March 2010, appellant initiated this action against several defendants who were allegedly liable to him for damages resulting from the failed development project at the 12th Street property.  In his first amended complaint (FAC), appellant limited his claims

to two distinct phases of the construction project, and to two sets of defendants; claims pertaining to the first phase were alleged against the Woos, and claims relating to the second phase of the project were alleged against respondent.

Appellant alleged that he was in a "desperate" situation in the fall of 2005 because the 12th Street property was completely unusable and his construction funding had "run out." He transferred his 12th Street property to Saigon pursuant to the advice of representatives of a mortgage company who offered to help him, and who then introduced him to Henry Park, a principal employed by respondent. Appellant alleged he was induced by Park's false assurances to accept the 2005 loan from respondent. [1] He also alleged that Park told him respondent would not allow the loan transaction to proceed unless he and his family pledged all their real estate, acquired "through many years of hard work," as additional collateral for the construction loan. That additional collateral included appellant's residence on Masonic Avenue. Appellant accused respondent of unlawful and unfair lending, debt collection and foreclosure practices, and alleged that, as a result of these practices, respondent did not have the legal ability "to enforce its deeds of trust or to collect the money it claims to have loaned to Saigon, including through foreclosure on any real property of [appellant] that was purportedly securing that loan."

In addition to the general allegations summarized above, appellant also alleged that he was a third-party beneficiary of the 2005 loan agreement between the Lender and Saigon because "(1) he was a member of Saigon; (2) the 12th Street Property had been his own property, and he had both an emotional and financial attachment to its success; and (3) [he] had pledged his own [r]esidence as security for the [2005 loan]." As an alleged third party beneficiary, appellant attempted to state claims against respondent for breach of contract, fraud and unfair business practices.

---

[1] In his FAC and, indeed, throughout these proceedings, appellant frequently ignores the distinction between the Lender of the 2005 loan, and respondent, the Lender's broker for that loan.

Appellant also alleged his claims arising out of the 2005 loan were timely because they were stayed during the pendency of his bankruptcy case and that they were not barred by the 2010 settlement agreement among respondent, Saigon and the other guarantors of the 2005 loan because he was specifically excepted from that agreement. In his prayer for relief against respondent, appellant sought rescission of a provision in the 2005 loan which allegedly granted respondent a security interest in appellant's Masonic Avenue property, avoidance of liens claimed by respondent against that property, and compensatory and punitive damages.

## C. Respondent's Motion to Compel Arbitration

In February 2011, respondent filed a petition to compel arbitration pursuant to the arbitration provision in the September 2005 letter agreement and the separate arbitration agreement that appellant signed. Respondent alleged it had demanded that appellant submit his claims to arbitration pursuant to the 2005 arbitration agreement(s) but appellant refused to arbitrate. In its petition, respondent also noted that Saigon had filed an adversary proceeding against respondent in its bankruptcy case in which it made "many of the same allegations" appellant makes in his FAC, and that the bankruptcy court granted respondent's petition to compel arbitration of those claims.

Respondent's petition also alleged facts defending its actions relating to both the origination of the 2005 loan and Saigon's default under that loan. Furthermore, respondent alleged it had meritorious defenses to the FAC, including that appellant's causes of action against respondent are barred by the statute of limitations and by the 2010 settlement agreement. Respondent also claimed appellant remained liable for the balance due on the 2005 loan which was close to $6 million.

Appellant opposed respondent's petition on the grounds that (1) he did not agree to arbitrate his individual disputes; and (2) the arbitration agreement was unconscionable. However, appellant did not appear at the hearing on respondent's petition or otherwise contest the trial court's tentative ruling which was to grant that petition.

On April 15, 2011, the trial court granted the petition to compel arbitration and stayed appellant's claims against respondent pending completion of the arbitration

5

pursuant Code of Civil Procedure section 1281.4.[2]  In its order, the trial court found that appellant failed to substantiate his claim that the arbitration agreement was unconscionable.  The court also found that appellant was bound by the arbitration agreement(s) because (1) his claims arose out of the 2005 loan agreement; (2) the FAC allegations established that appellant was both an agent of Saigon and a third party beneficiary of the 2005 loan; (3) appellant signed the arbitration agreement "both in his capacity as Managing Member of [Saigon] and in his individual capacity"; and (4) the arbitration agreement was binding on the agents of Saigon.

### D.  Proceedings Prior to the Arbitration

On May 4, 2011, appellant filed an ex parte application for a temporary restraining order to prevent respondent from completing a pending foreclosure sale of the Masonic Avenue property.  The trial court denied the application, finding that appellant failed to "establish a reasonable probability that he will prevail on the merits of his claims."  On May 11, appellant filed a Chapter 13 bankruptcy petition which was dismissed on May 31.  On June 7, appellant filed a Chapter 11 bankruptcy petition.  However, the bankruptcy court ordered and confirmed that appellant's case was not protected by the automatic bankruptcy stay.  On July 14, respondent completed the foreclosure sale of appellant's property pursuant to the terms of the 2005 Masonic DOT.

On October 21, 2011, appellant filed and recorded a notice of pendency of action against the Masonic Avenue property.

In November 2011, the trial court issued a case management order directing the parties in this case to participate in a mandatory settlement conference and setting a trial date for July 13, 2012.

On February 6, 2012, respondent filed a motion requesting that the trial court (1) confirm that the arbitration stay barred a trial of appellant's claims against respondent; (2) expunge appellant's notice of pendency of action against the Masonic

---

[2]  All further statutory references are to the Code of Civil Procedure unless we state otherwise.

6

Avenue property; and (3) dismiss appellant's claims against respondent for failure to prosecute the arbitration.

On March 23, 2012, the trial court conducted a hearing on respondent's motion and then filed an order confirming that only appellant's claims against the Woo defendants would be tried in July 2012, and granting respondent's request to expunge the notice of pendency of action.[3] The court denied respondent's motion to dismiss appellant's action against respondent without prejudice, although it warned appellant that it would likely grant the motion if arbitration was not completed before the July 2012 trial date.

On May 9, 2012, appellant filed a request to dismiss the Woo defendants from this action, without prejudice.

**E. The Arbitration**

On July 4, 2012, appellant filed a demand for arbitration with the American Arbitration Association (AAA), which respondent answered on July 19. Respondent contends without dispute that the parties agreed to the appointment of Dean E. Barbieri, Esq. as the arbitrator for this case.

A December 2012 "Report . . . and Scheduling Order" reflects that the arbitrator resolved two matters at a November 28 preliminary hearing. First, he accepted a November 2012 version of appellant's complaint, rejecting respondent's contention that the pleading constituted an untimely "new claim." Second, the arbitrator ordered that respondent could file a motion for judgment on the pleadings or similar motion to determine whether appellant's claims were barred, either because they had already been decided in another forum or because appellant lacked standing to bring them. According

---

[3] On March 26, 2012, the trial court filed a separate order expunging appellant's notice of pendency of action and awarding respondent attorney fees and costs. The court found that appellant "failed to establish, by a preponderance of the evidence, the probable validity of any real property claims asserted in this action," and also "failed to establish that he acted with substantial justification in recording the notice of pending action . . . ." Appellant filed motions for reconsideration and a stay of the expungement order, which the trial court denied.

to the arbitrator's report, "[a]fter significant discussion, it was determined that the filing of such a motion should be permitted."

The scheduling order, which was part of the December 2012 report, provided that respondent's motion was due January 17, 2013, appellant's response was due on February 4, and a hearing would be held on February 11, if a party requested a hearing from the AAA. Another preliminary hearing was scheduled for the week of March 4, 2013.

On or around January 14, 2013, respondent submitted its motion for an arbitration award on the grounds that appellant lacked standing to assert the claims alleged in his complaint and that respondent had a complete defense to all of those claims. The motion was supported by a memorandum of points and authorities, two declarations and a request for judicial notice. Appellant filed a timely opposition to the motion which was supported by a declaration from appellant and a request for judicial notice. A hearing on the motion was scheduled but postponed to March 7, 2013. In the interim, both parties filed supplemental pleadings in support of their respective positions.[4]

The March 7 hearing was conducted by telephonic conference. Appellant was represented by his counsel, Chijeh Hu, who advised the arbitrator that he had filed a motion in the superior court to withdraw from this case. Hu also reported that appellant wanted to hear the arbitrator's decision and had planned to be at Hu's office but had not shown up. The arbitrator continued the hearing until March 14.

Appellant failed to appear at the March 14 hearing, but he was represented by Mr. Hu, whose motion to withdraw was still pending in the trial court. According to a declaration that was subsequently filed by respondent's counsel, Jeffrey Trowbridge, at the conclusion of the hearing, the arbitrator "indicated that he would be considering his decision," but he "did not order or allow any further briefing or argument."

---

[4] The majority of these pleadings are not in the court record, but they are described in a declaration of respondent's counsel that was filed in the superior court.

8

On April 17, 2013, the superior court denied Hu's motion to be relieved as counsel for appellant for failure to provide appellant with proper notice. Hu re-filed the motion on April 29. Respondent opposed the motion, expressing concern that Hu's withdrawal would further delay and disrupt the arbitration proceeding.

On May 23, 2013, the parties and the arbitrator exchanged a series of emails regarding a recently published tentative ruling by the trial court to grant Hu's motion to withdraw from the case. In that tentative ruling, the court questioned why respondent was concerned that granting the request would "disrupt or delay the arbitrator's ruling on the fully briefed dispositive motion pending before the arbitrator."

Respondent's counsel, Mr. Trowbridge, initiated the email correspondence about the trial court's tentative ruling. Trowbridge explained he was concerned because the final hearing on respondent's motion had already been delayed for more than two months. However, he offered to withdraw his opposition to Mr. Hu's request if the withdrawal would not cause additional delay. The arbitrator sent an email response which notified the parties that once the court ruled on Hu's withdrawal request, he would "proceed rapidly" with the pending motion. By copy of his email to the AAA case manager, the arbitrator directed that a final hearing would be conducted by telephone conference call "to occur within the next two weeks, with the order on the pending motion to be submitted very shortly after that." Hu sent a responsive email in which he acknowledged he was still appellant's counsel, but suggested that the hearing date should not be set until appellant obtained new counsel.

Trowbridge sent another email, sharing his "lingering concerns" about the process. Specifically, Trowbridge pointed out that all evidence, briefing and argument on respondent's motion had been completed on March 7, the matter was continued only because appellant wanted to be present on the telephone, appellant chose not to participate in the March 14 call, and "[i]ssues of attorney withdrawal then arose." Trowbridge was concerned that once Hu's withdrawal was complete, appellant would claim he could not participate in a final hearing in the next two weeks or for the indefinite future. Thus, he requested that the arbitrator either (1) deem the matter submitted or

9

(2) immediately schedule a hearing date for May 30 and instruct Hu to give notice of the hearing to his client before the withdrawal motion was formally resolved.

On May 24, the arbitrator sent an email to the parties advising them that he would adopt Trowbridge's second suggestion and schedule a telephonic hearing for May 30, 2013, at 3:00 p.m. That same day, Hu forwarded the arbitrator's May 24 email to appellant and others, advised appellant to attend the hearing because it was important, and also stated that if appellant could not "make the date" he should send the arbitrator an email proposing alternative dates, and copy respondent's counsel on the e-mail.

On May 28, 2013, the superior court granted Mr. Hu's motion to be relieved as appellant's counsel in an order which stated that the court did not "understand" why respondent believed that the withdrawal would disrupt or delay "the arbitrator's ruling on the fully briefed dispositive motion pending before the arbitrator."

On the morning of May 30, 2013, a woman identifying herself as attorney Maureen Bryan-Furgurson, telephoned Mr. Trowbridge and asked that respondent stipulate to a continuance of the hearing that was to take place that afternoon. Bryan-Furgurson said she did not represent appellant but was asked to make the request on his behalf. Trowbridge responded that he was not authorized to agree to any further delays.

That same morning, an individual named Paul Cobb sent an email to the arbitrator requesting that the hearing be postponed. Cobb, who identified himself as appellant's "Attorney in fact, pursuant to a valid power of attorney agreement," stated that appellant "is not and will not be at today's tele-conference" because he did not have adequate representation, and he had not been "released" by his doctor to participate in a legal proceeding. Cobb requested a short continuance to find counsel for appellant.

The May 30 teleconference was not postponed and appellant did not call in to participate. According to a trial court declaration from Trowbridge, the arbitrator did not hear argument and no evidence was "offered, requested or allowed." Instead, the arbitrator stated that he had decided to grant respondent's motion and that he would issue a formal arbitration award "in due course."

The June 7, 2013 "Award of Arbitrator" contains a comprehensive summary of the arbitration proceedings, which includes specific details regarding the schedule for presenting, opposing and deciding respondent's potentially dispositive motion and which states that "[b]oth sides were given the full opportunity to brief, provide evidence as appropriate, and to argue the motion." The arbitrator then set forth his findings, made after "due consideration" of the briefs, evidence and argument, that (1) appellant lacks standing to assert the claims set forth in the arbitration complaint; and (2) respondent established complete defenses to each claim. Pursuant to these findings, the arbitrator made a "final and binding Award" that appellant take nothing from respondent and that each party was to bear its own attorneys fees and costs of suit.

The record does not disclose how or when the Arbitration Award was originally served. However, respondent's counsel mailed formal notice of the award to appellant on June 13, 2013.

### F. The Petition to Vacate the Arbitration Award

On October 22, 2013, appellant filed a petition to vacate the arbitration award on the grounds that he was "entitled to judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process, pursuant to C[ode of] C[ivil ]P[rocedure] §§ 1286.2 and 473[, subdivision] (b)." Respondent opposed the petition and requested that the court affirm the arbitration award pursuant to section 1268.

On December 17, 2013, the trial court held a hearing and then denied the petition to vacate the arbitration award on two independent grounds. First, the court found that the petition was untimely because it was filed after the 100-day deadline for filing a petition to vacate an arbitration award. (§ 1288.) The court found that this limitation period was jurisdictional and thus appellant could not properly rely on section 473 as an excuse for his failure to comply with it. (Citing *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1211 (*Abers*).)

Second, the court found that appellant failed to establish any basis for vacating the arbitration award. Explaining this finding in its minute order, the court stated that

11

appellant had failed to "show that the arbitrator committed any misconduct at all, let alone any misconduct that substantially prejudiced Plaintiff's rights." The order further states: "Plaintiff fails to demonstrate that he was prejudiced by failing to appear at a hearing at which the arbitrator announced his decision to grant Defendant's fully briefed dispositive Motion, to which Plaintiff (represented at the time by counsel) had filed a substantive opposition."

Finally, the court granted respondent's request that the court affirm the arbitrator's award pursuant to section 1286. A formal order memorializing the court's findings was filed on December 18, 2013. A judgment on confirmed arbitration award was filed on December 24. Appellant timely appealed.

## III.

## DISCUSSION

### A. The Order Compelling Arbitration

Appellant first contends that the trial court erred by ordering him to arbitrate his claims against respondent pursuant to the two arbitration agreements that he signed in 2005. "When 'the language of an arbitration provision is not in dispute, the trial court's decision as to arbitrability is subject to de novo review.' [Citation.] Thus, in cases where 'no conflicting extrinsic evidence is introduced to aid the interpretation of an agreement to arbitrate, the Court of Appeal reviews de novo a trial court's ruling on a petition to compel arbitration.' [Citation.]" (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707.)

"A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (§ 1281.) "Arbitration has become a favored method of expeditiously resolving disputes, to the relief of overburdened civil courts. [Citation.] As a result, courts will indulge every intendment to give effect to arbitration clauses. [Citation.]" (*Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 872.)

In light of these principles, we affirm the trial court's finding that appellant's claims were subject to contractual arbitration. The two arbitration agreements appellant signed broadly apply to all claims relating to the 2005 loan transaction. The arbitration provision in the September 2005 letter agreement applies to "[a]ll disputes" relating to the 2005 loan and to all "parties and their respective officers, directors, agents, and employees." Similarly, the stand-alone arbitration agreement broadly applies to "any Dispute involving the loan." Appellant's contract and tort claims against respondent which are all premised on his allegations that he is a third party beneficiary of the 2005 loan are manifestly covered by the extremely broad scope of these two arbitration agreements. " 'A long line of California and federal cases holds that claims framed in tort are subject to contractual arbitration provisions when they arise out of the contractual relationship between the parties.' [Citations.] It is the dispute, not the named cause of action, that is the focus of inquiry." (*Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 739.)

Appellant argues he is not bound by the arbitration agreements because he did not sign them in his capacity as an individual but only as the managing member of Saigon. The record shows otherwise. Appellant signed the September 2005 letter agreement above a signature line identifying him as "John Le Tung." Furthermore, he signed the stand-alone arbitration agreement above two separate lines, one identifying him as the "Managing Member" of Saigon, and the second identifying him simply as "John Le Tung." Appellant argues these signatures are not sufficient proof that he agreed to arbitrate his personal claims against respondent because there is no language in either agreement which explicitly references his individual claims arising out of the 2005 loan. However, as discussed above, appellant's claims as a third party beneficiary of that loan are covered by the broad scope of the arbitration agreements he signed.

Appellant mistakenly relies on *Benasara v. Marciano* (2001) 92 Cal.App.4th 987 (*Benasara*), where the appellate court held that an individual plaintiff could not be compelled to arbitrate his libel claim against a corporate defendant solely because he happened to sign two licensing agreements with the defendant in his capacity as president

of another corporation. The *Benasara* court found that the plaintiff was not a party to the licensing agreements because he "unambiguously signed both agreements as a corporate officer and only as a corporate officer, not in his individual capacity. [Citations.]" (*Id.* at p. 990.) Furthermore, the plaintiff was not bound by the arbitration agreement as a third party beneficiary of the license agreements because he never attempted to gain any personal benefit from those underlying agreements. (*Id.* at p. 991.)

*Benasara* is distinguishable on two material grounds. First, in this case appellant unambiguously signed both arbitration agreements in his own name and he also signed the stand-alone arbitration agreement a second time in his separate capacity as an officer of Saigon. Second, this entire action is premised on appellant's allegations that he has standing to assert claims against respondent as a third party beneficiary of the 2005 loan transaction.

Appellant consistently ignores the significance of his FAC allegations claiming third party beneficiary status under the 2005 loan. That admission supports the conclusion that appellant would be bound by the arbitration agreements even if he had signed them only as an agent and member of Saigon. (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1520 [individual who signed an arbitration agreement only in her capacity as president and CEO of the plaintiff company was bound by that agreement both as an agent-employee of the plaintiff and as a third party beneficiary of the underlying contract to which the arbitration agreement applied].) Indeed, even nonsignatories to an arbitration agreement can be bound by it when they are third party beneficiaries of the underlying contract. (See *Harris v. Superior Court* (1986) 188 Cal.App.3d 475, 478; *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 81–82.)

For all these reasons, we reject appellant's claim that the trial court erred by ordering him to submit his third party beneficiary claims against respondent to contractual arbitration.

14

## B. Appellant's Request to File An Untimely Petition to Vacate the Award

Section 1288 requires that a "petition to vacate an [arbitration] award . . . shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on petitioner." Moreover, section 1286.4 expressly limits the court's power to vacate an arbitration award to cases in which a petition has been "duly served and filed." Absent the timely service and filing of such a petition, the court is required to confirm the arbitration award if requested to do so within four years of its issuance. (§ 1286.)

Here, appellant concedes his petition to vacate was filed more than 100 days after service of the arbitration award. However, he contends the trial court erred by refusing even to consider whether he was entitled to relief from his mistake under section 473, subdivision (b) (section 473(b)), which provides that the "court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

Appellant's precise argument was rejected in *Abers*, *supra*, 217 Cal.App.4th at page 1211, where the appellate court affirmed a judgment dismissing an untimely petition to vacate an arbitration award. As the *Abers* court explained, settled case law establishes that section 473(b) " 'does not offer relief from mandatory deadlines deemed jurisdictional in nature.' " (*Abers*, *supra*, at p. 1211, quoting *Maynard v. Brandon* (2005) 36 Cal.4th 364, 372 (*Maynard*).) This jurisdictional bar applies to an untimely petition to vacate an arbitration award because "[t]he trial court's power to vacate an arbitration award is governed by statute, and the deadline for seeking such relief is mandatory. In the absence of some other statutory authority, the court simply cannot extend that deadline." (*Abers*, *supra*, at p. 1211, italics omitted.) Furthermore, applying section 473(b) to an untimely petition to vacate an arbitration award would be an "effective nullification" of the statutory 100-day limitation period because, in virtually every case in which a party is represented by counsel, the failure to comply with the deadline would be attributable to counsel's error. (*Abers*, *supra*, at p. 1212.)

15

Appellant acknowledges that *Abers* is directly on point and that the trial court was bound by it, but he asks this court to disregard it. According to appellant, *Abers* is unsound because it is not supported by any published case law and it conflicts with persuasive dicta in several cases, including a published decision by Division Two of this court, *DeMello v. Souza* (1973) 36 Cal.App.3d 79 (*DeMello*). We disagree with both prongs of this argument.[5]

First, as reflected in our discussion above, *Abers* is supported by *Maynard*, *supra*, 36 Cal.4th 372, binding Supreme Court precedent establishing the rule that section 473(b) does not apply to mandatory deadlines that are deemed to be jurisdictional. (*Abers*, *supra*, 217 Cal.App.4th at p. 1211.) The *Abers* court provided reasoned analysis for applying this jurisdictional rule to petitions to vacate an arbitration award. We are persuaded by that reasoning and adopt it here.

Second, appellant mistakenly relies on *DeMello*, *supra*, 36 Cal.App.3d 79. That case involved an arbitration award that resolved a dispute about the amount of death benefits due under a pension plan. (*Id*. at p. 82.) The claimant filed a petition to confirm the award, which the pension trustee opposed on the ground that the amount had not been calculated pursuant to the parties' stipulation. The trial court agreed with the pension trustee, corrected the amount and confirmed the award as corrected. However, the *DeMello* court reversed because the pension trustee's request to correct or vacate the award was not timely. (*Id.* at p. 84.)

The *DeMello* court held that because the pension trustee failed to "duly serve and file their response seeking correction under both sections 1288.2 and 1290.6, the trial court as a matter of law was barred from correcting the award in question." (*DeMello*, *supra*, 36 Cal.App.3d at p. 84.) In reaching this conclusion, the court expressly rejected

---

[5] Appellant also mistakenly contends that *Abers* conflicts with well-settled law recognizing a court's power to grant equitable relief for fraud, mistake or accident. In fact, the *Abers* court separately addressed and affirmed the trial court's discretionary decision to deny equitable relief in that case. (217 Cal.App.4th at pp. 1208-1210.) Here, appellant does not establish or even contend he was entitled to equitable relief.

16

the pension trustee's contention that statutes of limitation governing a petition to correct or vacate an arbitration award are not jurisdictional. (*Ibid*.) However, the court also considered the merits of respondent's theories that it was entitled to relief under section 473 and/or the equitable powers of the court. (*Id*. at pp. 84-97.) With respect to section 473, the court found that the pension fund's "application for relief, if any, was made more than one year after the proceeding," and thus relief could not be afforded under that statute "as a matter of law." (*Id.* at p. 84.)

According to appellant, the *DeMello* court's observation that section 473(b) did not afford relief to the pension trustee because he did not comply with that statutory deadline was an implicit acknowledgment that a party may move for relief under section 473 for failing to file a timely petition to vacate an arbitration award so long as the motion is made within the six month time frame applicable to section 473. We do not agree with this interpretation of *DeMello*; the court's observation that the petitioners would not, in any event, have been entitled to relief under section 473 did not dilute its primary holding regarding the dispositive issue in the case, i.e., that the statutory limitations periods applicable to petitions to vacate an arbitration award are jurisdictional. (*DeMello, supra*, 36 Cal.App.3d at p. 84.)

Appellant also relies on *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739 (*Eternity Investments*), another appeal from a judgment confirming an arbitration award. The *Eternity Investments* court affirmed the judgment on the ground that appellants failed to serve or file a petition or response to correct or vacate the award before the 100-day period expired. The court observed there were sound reasons for the statutory deadlines and that appellant's failure to follow them left the trial court with no choice but to affirm the award. (*Id*. at pp. 745-746.) The *Eternity Investments* court also stated: "Of course, a party with a reasonable excuse for failing to comply with the 100-day time limit may obtain relief in a trial court under section 473, subdivision (b). [Citation.]" (151 Cal.App.4th at p. 746.) However, the court concluded that section 473(b) and other potential exceptions to the statutory deadline did not apply in the case

before it and, therefore, the trial court acted properly by confirming the arbitration award. (*Eternity Investments*, *supra*, at p. 746.)

Eternity Investments* does not alter our conclusions in this case because it provides neither legal authority nor analytical support for its assumption that section 473 relief is available for failure to file a timely petition to vacate an arbitration award. By contrast, as discussed above, the holding in *Abers* is well-supported by both analysis and pertinent legal authority. (*Abers*, *supra*, 271 Cal.App.4th at p. 1212; see also Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2014) [¶] 5:510-5:510.3, p. 5-469 ["The view in *Abers*, *supra*, seems correct."].) Furthermore, in our opinion, the *Abers* holding is consistent with the policies of this state favoring arbitration as a more expeditious and less expensive means of resolving disputes than litigation. (See *Mercury Ins. Group. v. Superior Court* (1998) 19 Cal.4th 332, 342.)

For all these reasons, we agree with the trial court that section 473 does not afford relief for failure to comply with the mandatory statutory deadline for filing a petition to vacate an arbitration award. Nevertheless, because we are cognizant of the history of delay in bringing this case to a close, we will also review the trial court's alternative ruling that even if appellant could be excused for filing an untimely petition, he failed to establish a valid basis for vacating the arbitration award.

## C. **Appellant Did Not Establish A Valid Ground For Vacating the Award**

Judicial review of a contractual arbitration award is extremely limited. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11-13.) "[W]e cannot review the merits of the underlying controversy, the arbitrator's reasoning, or the sufficiency of the evidence supporting the award. [Citation.] Even 'an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review.' [Citation.] Code of Civil Procedure sections 1286.2 and 1286.6 provide the only grounds for challenging an arbitration award. [Citation.] [¶] Moreover, in reviewing a judgment confirming an arbitration award, we must accept the trial court's findings of fact if substantial evidence supports them, and we must draw every reasonable inference to support the award. [Citation.] On issues concerning whether the arbitrator exceeded his

18

powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority. [Citations.]" (*Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1087.)

In this case, appellant contends the trial court was required to vacate the award pursuant to section 1286.2, subdivisions (a)(3) and (a)(4), which provide, respectively, that the court "shall" vacate an award if it determines that the "rights of the party were substantially prejudiced by misconduct of a neutral arbitrator" and/or that the arbitrator "exceeded [his] powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

Appellant's theory is that the arbitrator committed misconduct, exceeded his powers and caused appellant substantial prejudice by violating section 1282.2, subdivision (a)(1) (section 1282.2(a)(1)), which states in relevant part: "Unless the arbitration agreement otherwise provides, or unless the parties to the arbitration otherwise provide by an agreement which is not contrary to the arbitration agreement . . . [¶] (a)[¶] (1) The neutral arbitrator shall appoint a time and place for the hearing and cause notice thereof to be served personally or by registered or certified mail on the parties to the arbitration and on the other arbitrators not less than seven days before the hearing. Appearance at the hearing waives the right to notice."

Appellant argues the trial court was required to grant his petition because he established that the arbitrator violated section 1282.2(a)(1) by providing appellant with only six instead of seven days notice of the May 30 hearing and by giving notice of that hearing by email instead of by personal service or registered or certified mail as required by the statute. We reject this argument for several reasons.

First, as reflected in the statutory language quoted above, the notice requirements set forth in section 1282.2 are not set in stone; the parties may agree to a different procedure for setting the time and place for a hearing and providing notice of that hearing. In this case, appellant produced the May 2013 email correspondence discussed in our factual summary which supports the conclusion that the parties agreed to an

informal procedure for scheduling, rescheduling and postponing the final telephone conference hearing, and for communicating about that matter via email.

Second, the section 1282.2 notice requirements do not apply to every meeting convened by an arbitrator. (See *Turner v. Cox* (1961) 196 Cal.App.2d 596, 600-601 [meeting to execute formal arbitration award was not a hearing contemplated by the arbitration statutes].) Here, we are not persuaded that the May 30 proceeding was the type of hearing to which the statutory notice requirements apply. This was not the original hearing on the respondent's motion. Rather, the May 30 hearing was a much delayed telephone conference, the sole purpose of which was to announce the arbitrator's decision.

Third, as the trial court found, appellant did not establish that he was prejudiced by the notice procedure used to schedule the May 30 hearing. Appellant had actual notice of the continued hearing date and the opportunity to personally appear simply by picking up the telephone. Appellant contends that he was prejudiced because the shortened notice via email denied him sufficient time to prepare for the hearing or to be heard at a "meaningful time and in a meaningful manner." Again, the record supports the trial court's contrary conclusion. The sole purpose of the telephonic hearing was to announce the arbitrator's decision; all the evidence and argument has already been presented prior to that final conference. Although appellant had expressed a desire to be present for the arbitrator's announcement, his absence did not affect the arbitrator's decision in any way.

Alternatively, appellant contends the award should be vacated because the arbitrator committed misconduct by refusing to postpone the May 30 hearing. (§ 1286.2, subd. (a)(5).) An arbitrator's refusal to postpone a hearing is reviewed for abuse of discretion and is ground for reversal only upon a showing of substantial prejudice. (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1198.) Here, the undisputed evidence establishes that (1) appellant did not request a continuance until the day of the hearing; (2) the sole purpose of the May 30 teleconference was to announce the arbitrator's decision; and (3) the matter had already been continued several times. Under these circumstances, the trial court properly rejected appellant's theory that

20

the arbitrator committed misconduct and/or caused him substantial prejudice by refusing to continue the hearing and further delay the announcement of his decision.

## IV.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


_____
RUVOLO, P. J.


We concur:


_____
RIVERA, J.


_____
BOLANOS, J.*


\*  Judge of the San Francisco City and County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.