Filed 8/25/25  Scott v. Union Rescue Mission CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARK SCOTT, | B339277 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCP01233) |
| v. | |
| UNION RESCUE MISSION, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Mark Scott, in pro. per., for Plaintiff and Appellant.

Musick, Peeler & Garrett, and Philip Ewen for Defendant and Respondent.

_____

Defendant and respondent Union Rescue Mission (URM), a nonprofit corporation, operates a shelter for people experiencing homelessness.  Plaintiff and appellant Mark Scott, a former resident and alleged former employee of the shelter, filed a claim for unpaid wages against URM with the Labor Commissioner.  A hearing officer rejected Scott's claim.

Scott appealed the hearing officer's decision to the trial court for a de novo trial pursuant to Labor Code section 98.2.  The trial court ordered Scott to serve URM with notice of the proceeding and denied Scott's request for leave to serve URM by delivering notice to the Secretary of State.  Two years after Scott appealed, the court found that Scott had neither properly served URM nor diligently attempted to do so, and dismissed the matter for delay in prosecution pursuant to, among other authorities, Code of Civil Procedure section 583.420.[1]

Scott contends that the trial court erroneously denied his request for leave to serve URM via the Secretary of State.  He also alleges that the trial court improperly engaged in ex parte communication with URM's chief financial officer (CFO) during the first conference in the case.  However, Scott chose to proceed without a record of the oral proceedings, and the documentary record indicates that URM never appeared, through its CFO or otherwise.  Finding no error on the record provided, we affirm.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

# BACKGROUND

### A.  Scott appealed the Labor Commissioner's decision to the trial court, which ordered Scott to serve URM with notice of the proceeding.

From January 2018 to February 2019, Scott lived in URM's shelter for people experiencing homelessness as a guest and program participant.  For part of this time (March to October 2018), Scott updated bulletin boards in the shelter in exchange for URM waiving its $210 monthly program fee.  Scott subsequently asked URM to pay wages for his past work, and URM refused, but paid him $2,400.

Scott filed a claim against URM with the Labor Commissioner for $11,520 in unpaid wages, in addition to business expenses, liquidated damages, and waiting-time penalties.  After an evidentiary hearing, the hearing officer determined that Scott was not entitled to any award because he failed to prove that he had been an employee.[2]

On April 6, 2022, Scott appealed the hearing officer's decision to the trial court pursuant to Labor Code section 98.2.  "[T]he [Labor Code] section 98.2 proceeding is neither a conventional appeal nor review of the Labor Commissioner's decision, but is rather a de novo trial of the wage dispute."

---

[2] According to the hearing officer's decision, "Plaintiff testified that he did not have a work schedule and did not report to anybody when he worked.  Plaintiff also testified that he worked without supervision and/or instructions from Defendant.  Plaintiff explained that he had no expectation of any compensation for his services."  URM's witnesses similarly testified that Scott had "no clear defined job" and "was not promised any wages or money for services."

3

(*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1116.)

The trial court scheduled an initial case management conference (CMC) for August 23, 2022. The minute order from the initial CMC stated: "Plaintiff needs to serve notice of the Case Management Conference and Notice of Appeal. [¶] . . . [¶] If not served and there is no showing of reasonable diligence of service, the Court will dismiss the matter at the next hearing." Although the minute order's heading stated that "No Appearances" were made by either party, its text stated that the court called the matter for a hearing and directed Scott to give notice, implying that Scott did appear (as he alleges on appeal). However, nothing in the minute order or elsewhere in the record indicates that URM appeared.

The court continued the CMC to November 2, 2022, and set the same date for a hearing on an "Order to Show Cause Re: Failure to File Proof of Service." As described below, the court continued the CMC six more times and ultimately dismissed the case at the seventh CMC based on Scott's failure to serve URM with notice of the proceeding.

**B.    The trial court found Scott's proof of service insufficient and denied his request for leave to serve URM via the Secretary of State.**

At the second CMC, in November 2022, the trial court granted Scott "leave to have service of the petition [*sic*] rendered upon the person in charge at the time of service and thereafter mail a copy of the petition."

4

At the third CMC, on December 29, 2022, Scott represented that he had served URM the day before, and the trial court ordered Scott to file proof of service.

In March 2023, two days before the fourth CMC, Scott filed a proof of service executed by a process server. The process server declared that on December 28, 2022, he served notice of the proceeding on URM's agent for service, CFO Christopher Su, by leaving copies of the papers with a security guard at Su's office address. At the fourth CMC, the trial court found the proof of service "insufficient."

At the fifth CMC, in June 2023, the trial court found that Scott still had not served notice of the proceeding and stated that the court might dismiss the matter at the next hearing if he did not diligently attempt service.

In June 2023, Scott re-filed the same proof of service that the trial court had found insufficient. This time, Scott attached an unsigned request for leave to serve URM via the Secretary of State.[3]

---

[3] Scott's request did not identify statutory authority for service via the Secretary of State. However, Corporations Code section 1702 provides: "If an agent for the purpose of service of process . . . cannot with reasonable diligence be found at the address designated for personally delivering the process, . . . and it is shown by affidavit to the satisfaction of the court that process against a domestic corporation cannot [otherwise] be served with reasonable diligence upon the designated agent . . . or upon the corporation . . . , the court may make an order that the service be made upon the corporation by delivering [process] by hand to the Secretary of State . . . ." (Corp. Code, § 1702, subd. (a).)

The court held the sixth CMC in October 2023, but the record does not contain the minute order or any record of the oral proceedings.

In January 2024, Scott filed a second request for leave to serve URM via the Secretary of State. Without a hearing, the trial court denied the request on the ground, among others, that the request did not demonstrate "by competent evidence (i.e., a declaration under penalty of perjury with sufficient knowledge)" that Scott exercised reasonable diligence in attempting to serve URM by other means.

## C. The trial court dismissed the proceeding for delay in prosecution.

On April 9, 2024 (two years and three days after Scott appealed the Labor Commissioner decision), the trial court held the seventh CMC. The court found that Scott had not served URM with notice of the proceeding or diligently attempted to do so. The court explained:

"Plaintiff claims that Defendant is 'evading service.' However, it is undisputed that the Defendant is still operating its business daily, on Skid Row (a mere mile or so from this courthouse). Defendant does have a designated agent for process of service. Plaintiff has failed to adequately explain why he has not effectuated service in a timely manner. [¶] Additionally, this Court notes that this is the SEVENTH Case Management Conference which has been held in this case over the last two years. At each prior CMC, the Plaintiff was advised by this Court that he must effectuate service of process by the next hearing, or his case would be dismissed. He stated that he understood, and that he would do so. He hasn't. This Court has

6

been more than patient with the Plaintiff, but to no avail.  The Court had previously stated to Plaintiff that perhaps he should attempt to serve via publication."

Based on those findings and the totality of the circumstances, the court exercised its discretion to dismiss the case pursuant to Code of Civil Procedure sections 583.150 and 583.420, Government Code section 68608, and the court's inherent authority.  The court issued a signed minute order dismissing the proceeding, which is appealable.[4]  (*City of Los Angeles v. City of Los Angeles Employee Relations Bd.* (2016) 7 Cal.App.5th 150, 157.)

Scott filed a timely notice of appeal.

## DISCUSSION

Section 583.410 provides:  "The court may in its discretion dismiss an action for delay in prosecution pursuant to this article on its own motion . . . if to do so appears to the court appropriate under the circumstances of the case."  (§ 583.410, subd. (a).) Section 583.420 limits that discretion by providing that the court "may not dismiss an action pursuant to this article for delay in prosecution except after one of [three specified] conditions has occurred," including that "[s]ervice is not made within two years after the action is commenced against the defendant."  (§ 583.420, subd. (a)(1).)  Here, the trial court properly dismissed the

---

[4] The signed dismissal order was omitted from the clerk's transcript, but Scott submitted it to this Court on August 22, 2024, in response to our notice that he failed to attach a signed judgment to his civil case information statement.  On our own motion, we order the record augmented to include the signed dismissal order.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)

7

proceeding under sections 583.410 and 583.420 only after finding that Scott failed to serve URM with notice of the proceeding within two years after he commenced it.[5]

We review a dismissal based on delay in prosecution for abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 & fn. 7.) " ' "[U]nless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' " (*Id.* at p. 331.)

As explained below, we conclude on the record before us that Scott has failed to show either an abuse of discretion or a miscarriage of justice. Accordingly, we affirm.

### A. The trial court acted within its discretion by denying Scott leave to serve URM via the Secretary of State.

Scott contends that the trial court erroneously denied his request for leave to serve process on URM by delivering notice of the proceeding to the Secretary of State. He argues that this ruling "effectively foreclosed any meaningful path to serve

---

[5] As the trial court recognized, its inherent powers and Government Code section 68608 provided additional authority for the dismissal. The Code of Civil Procedure "does not limit or affect the authority of a court to dismiss an action . . . under inherent authority of the court." (§ 583.150.) Government Code section 68608, which is part of the Trial Court Delay Reduction Act, provides that "[j]udges are encouraged to impose sanctions to achieve the [Act's] purposes," and that "[j]udges shall have all the powers to impose sanctions authorized by law, including the power to dismiss actions . . . , if it appears that less severe sanctions would not be effective after taking into account the . . . previous lack of compliance in the case." (Gov. Code, § 68608, subd. (b).)

[URM]" and therefore excused his delay in service, rendering the court's dismissal based on that delay an abuse of discretion. We find no error.

Corporations Code section 1702 provides that a trial court "may" authorize a plaintiff to serve process on a corporation by delivering the necessary documents to the Secretary of State if the corporation's agent for service of process "cannot with reasonable diligence be found at the address designated," and if the plaintiff shows "*by affidavit* to the satisfaction of the court" that the plaintiff cannot otherwise serve the corporation or designated agent "with reasonable diligence." (Corp. Code, § 1702, subd. (a), italics added.) "An affidavit is a written declaration under oath, made without notice to the adverse party." (Code Civ. Proc., § 2003.) "To qualify as an alternative to an affidavit, a declaration must be signed and recite that the person making it certifies it to be true under penalty of perjury." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 941; see also Code Civ. Proc., § 2015.5.)

Here, the trial court denied Scott leave to serve URM pursuant to Corporations Code section 1702 because Scott did not demonstrate "by competent evidence (i.e., a declaration under penalty of perjury with sufficient knowledge)" that he attempted with reasonable diligence to serve URM by other means. Scott asserts that he presented such evidence, but he cites only a single proof of service that he re-filed in June 2023—after the trial court found the same proof of service insufficient in March 2023—and his attached request for leave to serve URM via the Secretary of State. We conclude that neither document demonstrates that the court abused its discretion.

9

First, the proof of service did not comply with the trial court's directions for service or with section 415.20, because the process server did not declare that he mailed copies of the required papers to URM's office after he left copies there with a security guard.  (See § 415.20, subd. (a) ["In lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10 [service on corporations], . . . a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof, *and by thereafter mailing a copy* of the summons and complaint . . . to the person to be served at the place where a copy of the summons and complaint were left" (italics added)].)  Nor did the proof of service state any facts indicating that the security guard was "apparently in charge" of the office.  (*Ibid.*)

Moreover, the proof of service described only a single attempt to serve URM's agent for service, CFO Christopher Su, at his office.  Even assuming, arguendo, that Su was not present or the security guard prevented the process server from reaching him (matters on which the proof of service was silent), we do not believe that the process server's failure to personally serve Su on this single occasion compelled the trial court to find that Su could not be personally served "with reasonable diligence."  (Corp. Code, § 1702, subd. (a).)

In Scott's requests for leave to serve URM via the Secretary of State, he alleged that the process server, among others, made additional attempts to serve Su.  However, Scott did not file any supporting affidavit or declaration.  Nor did he sign his requests under oath or under penalty of perjury.  Thus, his requests themselves were not affidavits or competent substitutes.

(§§ 2003, 2015.5; *Sweetwater Union High School Dist. v. Gilbane Building Co.*, *supra*, 6 Cal.5th at p. 941.)

We conclude that the trial court properly found that Scott failed to meet his burden to show "by affidavit" that he made reasonably diligent attempts at service. (Corp. Code, § 1702, subd. (a).) Because Scott did not satisfy this statutory condition precedent, the court acted within its discretion by denying his request for leave to serve URM via the Secretary of State. (*Ibid.*)

In his reply brief, Scott appears to argue that he did not need to serve URM in *any* manner because Su allegedly appeared at the initial CMC, showing that URM had actual notice of the proceeding. Because Scott did not raise this argument in his opening brief, he forfeited it. (*High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 112, fn. 2 ["New arguments may not be raised for the first time in an appellant's reply brief"].) In any event, the argument fails on its merits for two reasons. First, " '[a]ctual notice of the action alone . . . is not a substitute for proper service [of process] and is not sufficient to confer jurisdiction.' " (*Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1206.) Second, as discussed below, the record before us does not support Scott's allegation that Su or any other URM representative ever appeared in the trial court.

**B.  Scott provided an inadequate record to support his claim of an improper ex parte communication.**

Scott alleges that immediately after the trial court concluded the initial CMC and Scott exited the courtroom, Su entered the courtroom and engaged in ex parte communication with the court. Scott does not describe the substance of the alleged communication. Nevertheless, he argues that the alleged

11

communication warrants reversal because it created an appearance of judicial bias and empowered URM to evade service.

We must resolve this contention against Scott because the record that he provided is inadequate for meaningful review. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).) " 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.' " (*Id.* at p. 609.) " ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Ibid.*)

Here, nothing in the record indicates that the trial court engaged in ex parte communication with Su or with any other URM representative, either at the initial CMC or during any other hearing. On the contrary, each minute order in the record indicates that URM did not appear.

Scott contends that the minute order from the initial CMC erroneously failed to document the trial court's alleged ex parte communication with Su. However, in his notice designating the record on appeal, Scott chose to proceed without a reporter's transcript of the initial CMC (or an authorized substitute, such as a settled statement). In making that choice, Scott represented: "I understand that without a record of the oral proceedings in the superior court, the Court of Appeal will not be

able to consider what was said during those proceedings in deciding whether an error was made in the superior court proceedings."

Because nothing in the appellate record contradicts the minute order's statement that URM did not appear, we must presume that the minute order is accurate and that Su, being absent from the courtroom, did not engage in ex parte communication with the court. (See *Jameson*, *supra*, 5 Cal.5th at p. 609; cf. *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 ["defendants elected not to provide a reporter's transcript of the trial proceedings. Accordingly, they have no basis upon which to argue that the evidence adduced at trial was insufficient to support the trial court's finding"].)

For similar reasons, we reject Scott's claim that the dismissal order erroneously stated that the court had told Scott he should "perhaps" attempt service by publication. Because Scott provided no record of the oral proceedings, we cannot determine whether such a record would contradict or support the order. Thus, we presume that the order is accurate.[6] (See *Jameson*, *supra*, 5 Cal.5th at p. 609.)

"Marshaling the record and affirmatively demonstrating error are the appellant's burdens . . . ." (*Stratton v. Beck* (2018)

---

[6] Even assuming, arguendo, that the court never suggested service by publication, Scott fails to show error or prejudice. He does not claim that he would have served URM by publication if the court had suggested it. On the contrary, he argues that service by publication was unavailable because he knew the address for Su, URM's agent for service. We agree. (See *Watts v. Crawford* (1995) 10 Cal.4th 743, 749, fn. 5 ["If a defendant's address is ascertainable, a method of service superior to

30 Cal.App.5th 901, 914.) "[A] party appearing in propria persona . . . 'is entitled to the same, but no greater, consideration than other litigants and attorneys.' " (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.) "Accordingly, we may disregard [a self-represented appellant's] factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record." (*Ibid.*) We conclude that Scott failed to carry his burden to affirmatively demonstrate error on the record. Accordingly, we affirm.

## DISPOSITION

The dismissal order is affirmed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

BENDIX, Acting P. J.

WEINGART, J.

---

publication must be employed, because constitutional principles of due process of law, as well as the authorizing statute, require that service by publication be utilized only as a last resort"].)